STATE OF NEW JERSEY, ACTING BY AND THROUGH ROBERT A. ROE, COMMISSIONER OF THE DEPARTMENT OF CONSERVATION AND ECONOMIC DEVELOPMENT, PLAINTIFF-RESPONDENT, v. JOHN MALCOLM NORDSTROM AND FLORENCE B. NORDSTROM, HIS WIFE, *ET ALS.*, DEFENDANTS-APPELLANTS.

Argued February 18, 1969—Decided May 19, 1969.

*Mr. Richard S. Miller* argued the cause for defendants-appellants (*Messrs. Williams, Gardner, Caliri, Miller & Otley,* attorneys).

*Mr. Samuel D. Bornstein* argued the cause for plaintiff-respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Deputy Attorney General, of counsel; *Mr. Samuel D. Bornstein* and *Mr. Joel Shain,* Deputy Attorneys General, on the brief).

The opinion of the court was delivered by

Proctor, J. In this condemnation case, initiated by the State as part of its Green Acres program, the trial court awarded the condemnees, Mr. and Mrs. John Nordstrom, interest in addition to the jury's determination of the value of the land. Interest was computed for the period between the filing of the State's complaint and the jury award, even though the State did not take title or enter into physical possession of the land until after the verdict. The State appealed only that part of the judgment represented by the trial court's granting of interest. The Appellate Division reversed in an unreported opinion, holding that since the State had not actually entered into possession of the land, or taken title, interest could not be allowed. We granted the condemnees' petition for certification. 52 *N. J.* 494 (1968).

The facts are not in dispute. In the summer of 1963, the Commissioner of Conservation and Economic Development publicly announced that the State planned to acquire a large section of Caldwell Township (now known as the Borough of Fairfield) as part of the State's Green Acres program. *N. J. S. A.* 13:8A-1 *et seq.* In December, 1964, the State confirmed that at least part of the Nordstroms' land was to be condemned. In June, and again in August 1965, the State offered to pay the petitioners $1,250 per acre for the land, amounting to $57,000 for 47 acres. These offers were rejected, and this concluded the State's efforts to settle. On March 9, 1966, the State filed a complaint pursuant to the procedure set forth in the general condemnation statute, *N. J. S. A.* 20:1-1 *et seq.* An order appointing condemnation commissioners was entered shortly thereafter, but the hearing before the commissioners was postponed several times until February 1967, primarily upon the State's request. At the hearing the State's expert valued the property at $70,662. The commissioners' report, valuing the land at $375,000, was filed on March 27, 1967, more than one year after the complaint was filed. The State appealed

and the matter was set down for a jury trial on July 5, 1967. However, due to further adjournments requested by the State, the case was not tried until September 17, 1967. At the trial the State's new expert testified that the land was worth $150,400. The jury returned a verdict of $305,500. Upon application of the condemnees, interest was awarded from the date of the filing of the complaint, March 9, 1966, to the date of the verdict, September 26, 1967, computed by the court at a rate of 6% on the difference between the amount of the verdict, $305,500, and the highest appraisal given by the State's expert, $150,400. The interest award totalled $14,346.75, from which the State appealed.

Both our state and federal constitutions prohibit the taking of private property for public use without "just compensation." *N. J. Const. Art.* I, § 20; *U. S. Const. Am.* V. "Just compensation" is a principle grounded in fundamental concepts of fairness. See generally Michelman, "Property, Utility, and Fairness: Comments on the Ethical Foundations of 'Just Compensation' Law", 80 *Harv L. Rev.* 1165 (1967). A condemnee must be made whole as a result of the condemnation proceeding. Although a sum of money equal to "fair market value" cannot always be a perfect measuring stick for determining the worth of property to a landowner, the State must try as nearly as possible, employing objective standards, to replace the land which has been earmarked for public use with equivalent public funds.

The statutory condemnation procedure in this State requires the condemnation commissioners, and if there is an appeal, a jury, to value the land in question as of the date the complaint was filed. *N. J. S. A.* 20:1–9; *State, by State Highway Com'r v. Seaway, Inc.,* 46 *N. J.* 376, 381–382 (1966). In the present case the commissioners in February, 1967, and the jury in September, 1967, determined how much the Nordstrom property had been worth when the complaint was filed in March, 1966. A considerable period of time can go by after the filing of the complaint before compensation is paid to the landowner. In the meantime the

landowner remains responsible for the payment of taxes, plus interest payments on a mortgage, if any. These expenses cannot be considered by the commissioners or the jury, nor can they take notice of any rise in value of the property since the filing of the complaint. See *Acquackanonk Water Co. v. Weidmann, etc., Co.*, 99 *N. J. L.* 175, 176–177 (*E. & A.* 1923).

In *Metler v. Easton and Amboy Railroad Co.*, 37 *N. J. L.* 222 (*Sup. Ct.* 1874), the considerations with regard to interest payments for a time period prior to the jury's verdict were set forth as follows:

"Interest for the intermediate period is allowable, not strictly as damages for the taking, but as an equitable mode of compensating the owner for the necessary delay in ultimately ascertaining the amount he is entitled to be paid, and as the means of reaching the full measure of the just compensation which, by the constitution must precede the taking of the property of a private citizen for public uses.

"This general rule for the allowance of interest is liable to be controlled by the circumstances of each particular case. If the owner has not been disturbed in the possession, and has had a profitable use of the premises, or has received the rents for them pending the appeal, these circumstances should be taken into account and the interest abated accordingly. Possibly the like effect may be given to a tender and payment into court, where the statute provides for such proceeding * * *.

"Interest on demands of this character, not being a matter of contract, or of positive law, is allowed on equitable principles * * *." *Id.* 37 *N. J. L.*, at 224–225

These principles, articulated in an 1874 case, are not in the least diminished by the passage of time.

The awarding of interest does not lend itself to rigid guidelines, but rather is best considered on a case-by-case basis in order to determine compensation which is "just." One of the critical variables in every case is the use to which the land is being put by the condemnees. There would be good cause to abate interest if the condemnees were left undisturbed in their enjoyment of the property by the condemnation proceeding, or if they continue to receive undiminished rents and profits from the use of the land up to the time the State takes possession. On the other hand, where the condemnation

proceedings restrict the profitable use or enjoyment of the property, interest ordinarily should be allowed. See *Metler, supra*. And see Note, "Interest in eminent domain proceeding as affected by retention of possession by owner," 68 *L. Ed.* 171, 172 (1923): "The better rule would appear to be that which allows interest [pending condemnation proceedings], but requires the owner to account for rents and profits." *Cf. Fink v. Newark*, 40 *N. J. L.* 11, 17 (*Sup. Ct.* 1878).

The New Jersey cases relied upon by the State which have denied interest have done so because the condemnee had not been hurt in any significant way prior to the State's taking title or possession. In *State, by State Highway Com'r v. Hankins*, 63 *N. J. Super.* 326 (*App. Div.* 1960), a 70-foot strip of driveway at a gasoline station was used continuously by the condemnees and their patrons until the State took possession. See also *Board of Ed. of City of Vineland v. Ross*, 32 *N. J. Super.* 79 (*Law Div.* 1954). In *Blaicher Holding Co. v. City of Newark*, 12 *N. J. Misc.* 45, 169 *A.* 521 (*Sup. Ct.* 1933), interest was denied because there was no showing that the condemnee had been deprived of the profitable use of his factory as a result of the condemnation proceedings.

In the present case the Nordstroms' land was vacant, unimproved acreage, which produced no income stream to be applied in abatement against interest. The economic purpose of such investment landholding is readily apparent: By purchasing the unimproved land, the Nordstroms undoubtedly hoped that the land would increase in market value at a rate which would more than offset taxes and interest payments on mortgage loans. (In fact there is evidence in the record that the property went up in value 30% since the complaint was filed.) Profit would be generated upon the eventual improvement or sale of the property. By filing a complaint in a condemnation action, however, the State effectively foreclosed the possibility of improving the property or selling it to a third party while the proceedings were

pending. An improvement or sale of land made subject to a pending complaint in condemnation is not a likely occurrence. The economic realities of the situation preclude improvement, since the valuation of the property is frozen the day the complaint is filed, preclude leasing, since the tenancy would be precarious, and preclude sale, since the complaint is a substantial cloud on the title. The landowner's property is virtually straitjacketed, but tax and mortgage obligations continue unabated. See *Arverne Bay Construction Co. v. Thatcher,* 278 *N. Y.* 222, 15 *N. E.* 2d 587, 117 *A. L. R.* 1110 (*Ct. App.* 1938), in which Judge Lehman said: "The only substantial difference, in such case, between restriction and actual taking, is that the restriction leaves the owner subject to the burden of payment of taxation, while outright confiscation would relieve him of that burden." 15 *N. E.* 2d, at *p.* 592.

Although our decision does not turn upon this circumstance, we note in passing that the need for compensation is particularly acute in a case, such as the present one, where the burden placed upon the landowners during the intermediate period corresponds to a benefit conferred upon the State. Here unimproved land was being condemned for the purpose, pursuant to the State's Green Acres program, of maintaining the property in its unimproved condition. In effectuating the State's condemnation purpose during the intermediate period the Nordstroms were being subjected to a "scenic easement," a benefit to the State which destroyed any incentive for the prompt awarding of compensation. See Michelman, *supra,* 80 *Harv. L. Rev.,* at 1186–1187, 1196–1197, *n.* 66; *cf. Morris County Land Improvement Co. v. Township of Parsippany-Troy Hills,* 40 *N. J.* 539 (1963) where this Court invalidated a zoning ordinance which, in effect, restricted the use of swampland to such an extent that the land had to be retained in its natural state. We held that an ordinance which so affected private property for the public purposes of obtaining a floodwater detention basin and the preservation of a wetland wildlife sanctuary

was an unconstitutional taking without just compensation. *Cf.* also *Bydlon v. United States,* 175 *F. Supp.* 891 (*C. C.* 1959); *Mackie v. United States,* 194 *F. Supp.* 306 (*D. Minn.* 1961) (*dictum*).

Some delay is inevitable in every condemnation proceeding, and when there is no offsetting income or beneficial' use of the property the landowner is bound to be injured. Moreover, in such a situation the allowance of interest from the time of the filing of the complaint has the wholesome effect of stimulating the condemnor to prompt action, or at least to the making of a meaningful offer of settlement. In the present case the proceedings spanned a year and a half, and the State's highest offer of settlement was less than one-fifth the jury's verdict. See *Brown v. United States,* 263 *U. S.* 78, 86, 44 *S. Ct.* 92, 95, 68 *L. Ed.* 171, 182 (1923). In seeking to attain the full measure of just compensation which the state and federal constitutions require, it is necessary to recognize the economic harm which may occur prior to the actual physical taking by the condemnor. *Metler, supra.* We cannot say that the award of interest granted by the trial court was in any way beyond the scope of the judge's power, in weighing the facts and circumstances of the case before him, to do justice "according to the considerations of equity and fair dealing." *Bergen County Sewer Authority v. Little Ferry Bor.,* 15 *N. J. Super.* 43, 52 (*App. Div.* 1951). The condemnees do not contend before us that interest on the entire verdict should have been granted, even though such an award is arguably within the scope of the trial judge's power to do equity in a proper case* Here, certainly, the State has no cause to complain.

---

* We note that Assembly Bill No. 388, "The Eminent Domain Act of 1969," which the Assembly passed on April 28, 1969, parallels the holding in this case. It provides in Article VIII for the granting of interest to the condemnee at 6% upon the amount of compensation determined to be payable, from the date of the commencement of the action to the date of payment of compensation, provided that rents, profits, and beneficial use will be applied in abatement, and provided that interest shall not run on monies deposited into court.

The judgment of the Appellate Division is therefore reversed and the judgment of the trial court is reinstated.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*For affirmance* — None.