612 A.2d 967

NEW JERSEY TURNPIKE AUTHORITY, PLAINTIFF,
v. EUGENE MORI, JR., DEFENDANTS.

Superior Court of New Jersey
Law Division Hudson County

Decided April 20, 1992.

*L. Jeffrey Lewis* for plaintiff (*Sills Cummis Zuckerman Radin Tischman Epstein & Gross,* Attorneys).

*Seymour Wasserstrum* for defendant Eugene Mori, Jr.

MARGULIES, J.S.C.

The Turnpike Authority acquired a parcel of property in 1962 by condemnation. It was not until 1987 that a suit was filed to fix the award. At that time, the Authority deposited $27,000.00 with the court. It was determined that the parcel was worth $11,500.00 in 1962. Mr. Mori is now constitutionally entitled to his "just compensation".

To fix "just compensation" required that consideration be given to a variety of factors. Is the claim akin to damages or restitution? Is it to be based solely on interest and, if so, what rate should apply? What factors should influence the fixing of the rate? Should it matter that the Authority which was obligated to make payment maintained a portfolio which was income producing? Or, that the Authority was paying a certain rate of interest on its obligations for the use of money? Should the rate relate to Rule 4:42–11 rate or to Moody's rate or a 52–week treasury bill or the court's trust fund rate?

*N.J.S.A.* 27:23–5(j) provides:

"... If the amount of the award as finally determined shall exceed the amount so deposited, the person or persons to whom the award is payable shall be entitled to recover from the authority the difference between the amount of the deposit and the amount of the award, with interest at the rate of six per centum (6%) per annum thereon from the date making the deposit. ..."

No precedent was cited to resolve whether this act applies where there is a 25–year hiatus going back to 1962. Mori challenged it as violative of the separation of power doctrine because the Legislature sought to usurp a judicial function.

The Authority would limit the claim to interest damages measured by the three-year treasury note rate as a "prudent investment" which recognized the need to consider the safety of principal, reasonableness of rate of return, the need to hold market validity, the importance of maintaining liquidity, the reasonableness of the time factor, the advantage of minimizing capital risk of loss and market volatility. It gave no separate consideration to the Consumer Price Index in prudent investing

since the treasury bill rate took into consideration the effect of inflation.

Mori, too, urged that a proper interest rate was the approach to "just compensation" and that a "prudent investment" analysis would yield the appropriate rate. He argues for a rate based on Moody's Composite Index on A–Rated Corporate Bonds (because the Turnpike bonds were A–rated) with a minimum rate of 6% compounded annually.

Neither party addressed the issue of broad diversification. Neither considered the stock market nor the type investments authorized statutorily for fiduciaries. Both approached their analyses looking backwards at what the market had been between 1962 and 1987. Neither opined what a prudent investor would have done on analysis of the pre–1962 market. Each, therefore, as a Monday–morning quarterback, urged a conclusion as if they, as prudent investors, could have known how long a period would elapse between debt and payment. Each assumed that a prudent investor would have had the foresight to anticipate what eventuated.

Although the Authority's expert was highly qualified, skilled in her discipline and came with vast experience, it is difficult to accept a blanket 3–year term on a single type instrument as realistic when the time spread is over 25 years and the litigants did not know whether the obligation was going to be satisfied within a short or long time frame.

Much has been written on the issue of "just" compensation and on delayed payment. Among others, is Kaplan, *Interest Rates in Eminent Domain: Is 6% Just Compensation in a 12% World?, 12 Loyola of Los Angeles L.Rev. # 3, (6/79);* Annotations 56 *ALR Fed.* 477 and 19 *L.Ed.*2d 1361, 60 *L.Ed.*2d 1107.

Justice Proctor said in *State v. Nordstrom,* 54 *N.J.* 50, 253 *A.*2d 163 (1969) at 54, 253 *A.*2d 163:

"The award of interest does not lend itself to rigid guidelines, but rather is best considered on a case by case basis in order to determine compensation which is 'just'."

The Authority did not take money from Mori; it took realty. If it had paid him money, then he could have acquired comparable realty. Should "just" compensation then consider what has happened in the realty market over the past 25 years? Or, perhaps, the specific increase in value of the premises in question. But what if that parcel is now not even worth $11,500.00?

Should the court consider whether the creditor is a wise or foolish investor (what would he have done with the money?) or whether the debtor took advantage of the delay in payment and gained substantial profit from the delay—a concept akin to tracing.

In short, there is no single logical approach. There is a dearth of New Jersey cases on point and many federal cases are, at best, equivocal. Although "just" compensation may require the court to look from the eyes of condemnee to determine his loss rather than the gain to the condemnor, the viewing is objective and interest is only one of the relevant factors.

From 1962 to date, interest rates on three-year treasury notes varied from 3.47% to 11.55%; rates under Rule 4:42–11 varied from 02.75% to 12.00%; Moody's AAA Rate varied from 4.26% to 14.17%. A composite rate chart of miscellaneous instruments (six-month treasury bills, six-month commercial paper, 90–day prime bank accounts and certificates of deposit ranged from 3.06% to 14.91%). No evidence has been submitted showing median rates or average rates on these various instruments.

In the use of the tables, annual rate variations are at best to be considered in the abstract. No one proposed annual investments; similarly, long-term bondholders would not enjoy the fluctuating interest rates except as they may affect the value

of the bonds. Similarly, whether or not to compound interest would depend on the length of the investment.

In considering interest rates, we may look at the average, the mean, the median, or the mode. Annual rates would be of no value in any of those instances if the investment were for a period of longer than a year.

■ Considering all of the foregoing, including the Turnpike's portfolio, what it paid for the use of bondholders' money (and regardless of not taking into account the difference between the purchasing power of the dollar in 1962 as compared to today which is not in evidence and is not a factor in the resolution of this issue), a reasonable, adequate, fair and just compensation would be ten times the dollar in 1962. An interest rate compounded annually of approximately 8% would produce the same result.

In short, using 8% as a reasonable interest rate compounded annually as a factor, the $11,500.00 is now worth $115,000.00; that is 10 times what it was worth about 30 years ago. The Authority, of course, is to be given computation credit for its deposit and statutory interest on the deposit.