RUSSIAN ORTHODOX GREEK CATHO-
LIC CHURCH OF NORTH
AMERICA, Appellant,

v.

ALASKA STATE HOUSING AUTHORITY,
a public corporation, Appellee.

No. 1600.

Supreme Court of Alaska.

June 26, 1972.

Milton M. Souter, Anchorage, for appellant.

L. S. Kurtz, of Burr, Pease & Kurtz, Inc., Anchorage, for appellee.

Before BONEY, C. J., and RABINOWITZ, CONNOR, ERWIN and BOOCHEVER, JJ.

OPINION

BOOCHEVER, Justice.

This is an appeal from a denial of prejudgment interest and attorney's fees in an eminent domain proceeding. The parties have helpfully entered into a Stipulation Regarding Facts and Record on Appeal succinctly setting forth the factual background[1] which may be summarized as follows.

The Alaska State Housing Authority (ASHA) commenced this action on September 19, 1968 by filing a Complaint for Condemnation and a Declaration of Taking.[2] It sought to condemn two adjoining parcels of land in Kodiak, Alaska, said parcels being designated as Parcels 8–5 and 8–5a. The fee to Parcel 8–5 was held by the Russian Orthodox Greek Catholic Church of North America (Church), and the fee to Parcel 8–5a was held by the Fitzgeralds. At the time of the commencement of the action ASHA had actual notice of a long-term lease whereby the Church

had leased Parcel 8–5 to the Fitzgeralds. The lease contained the following provision:

It is mutually agreed that in the event of any condemnation proceedings wherein any part of the above-described property [Parcel 8–5], or any structure thereon, is condemned under the laws of the city, territory, state, or federal government, then in that event the proceeds from such proceedings derived from the appropriation of buildings or structures situated on the above-described property shall revert to the lessee, and the proceeds derived from the appropriation of any of the above-described realty shall revert to the lessor, . . . .

The Kodiak Hotel building was situated primarily on Parcel 8–5 and partially on Parcel 8–5a.[3]

Upon filing the action, ASHA deposited in the court registry the sums of $169,835 and $1,800 as the estimated just compensation for the taking of Parcels 8–5 and 8–5a respectively.[4] The sums were not

---

1. Such stipulations are authorized by Supreme Court Rule 9(e).

2. The statutory authorities for this procedure are set forth in:

   AS 09.55.420. *Declaration of taking by state or municipality.* Where a proceeding is instituted under §§ 240–460 of this chapter by the state, it may file a declaration of taking with the complaint or at any time after the filing of the complaint, but before judgment.

   . . .

   AS 09.55.430. *Contents of declaration of taking.* The declaration of taking shall contain

   (1) a statement of the authority under which the property or an interest in it is taken;

   (2) a statement of the public use for which the property or an interest in it is taken;

   (3) a description of the property sufficient for the identification of it;

   (4) a statement of the estate or interest in the property;

   (5) a map or plat showing the location of the property;

   (6) a statement of the amount of money estimated by the plaintiff to be just compensation for the property or the interest in it.

3. The Church did not contest the right of the Fitzgeralds to receive all of the just compensation awarded by the jury for Parcel 8–5a, the hotel structure and the hotel furnishings and fixtures.

4. AS 09.55.440 provides:

   *Vesting of title and compensation.* (a) Upon the filing of the declaration of taking and the deposit with the court of the amount of the estimated compensation stated in the declaration, title to the estate as specified in the declaration vests in the plaintiff, and that property is condemned and taken for the use of the plaintiff, and the right to just compensation for it vests in the persons entitled to it. The compensation shall be ascertained and awarded in the proceeding and established by judgment. The judgment shall include interest at the rate of six per cent per year on the amount finally awarded which exceeds the amount paid into court under the declaration of taking. The interest runs from the date title vests to the date of payment of the judgment.

   (b) Upon motion of a party in interest and notice to all parties, the court may order that the money deposited or a part of it be paid immediately to the person or persons entitled to it

segregated as to the amounts for the taking of the land in the parcels as opposed to the amount for taking of the hotel structure.

Approximately one month after commencement of the action, the parties stipulated that the Church could withdraw $25,000 from the court registry and that the Fitzgeralds and their privies could withdraw $136,635 therefrom, with $10,000 to remain in the registry pending a final decree in the action.

A master's hearing was waived and at the jury trial which ensued, ASHA presented only one witness, an appraiser, Raymond A. Richards, who testified as to the following fair market values of the properties being condemned:

a. The fee interest in the land contained in Parcel 8–5——$26,149

b. The fee interest in the land contained in Parcel 8–5a——$1,895

c. The hotel structure—$56,965

d. The hotel furnishings and fixtures— $7,500

After hearing testimony from all parties the jury set the following sums as the just compensation for the properties taken:

a. The fee interest in the land contained in Parcel 8–5——$33,700

b. The fee interest in the land contained in Parcel 8–5a (determined by stipulation extending the value per square foot of Parcel 8–5 to 8–5a)—— $2,441.88

c. The hotel structure——$64,000

d. The hotel furnishings and fixtures ——$9,000

The Fitzgeralds contested the Church's claim to the entirety of the condemnation proceeds for its fee interest in the land contained in Parcel 8–5. The Church obtained a summary judgment against the Fitzgeralds resulting in the entire $33,700 for fee interest in Parcel 8–5 being awarded to it.[5] On May 26, 1971 the Church also obtained a judgment against ASHA for the difference between the $25,000 withdrawn and the $33,700 award ($8,700) together with interest at six percent per annum from September 19, 1968 (the date of the original taking) until paid. Upon opposition being filed by the state, the court denied the Church's motions to fix attorney's fees and prejudgment interest. (In effect the court modified its former judgment by eliminating the interest from September 19, 1968 to the date of judgment.) The Church has appealed from the denial of prejudgment interest and attorney's fees.

The total amount awarded by the jury ($109,141.88) was substantially less than the amount deposited by the state ($171,635). AS 09.55.440[6] provides for interest on the amount awarded which exceeds the amount paid into court under the declaration of taking. ASHA contends that since the total amount deposited exceeded the total award no interest is due. The Church, however, was awarded $8,700 more than the amount the parties had stipulated to be withdrawn for its interest in the property. We are thus confronted with the questions of whether, under these circumstances, the Church was entitled to receive interest on the $8,700 portion of the award in excess

for or on account of the just compensation to be awarded in the proceedings. If the compensation finally awarded exceeds the amount of money deposited, the deposit shall be offset against the award. If the compensation finally awarded is less than the amount of money deposited, the court shall enter judgment in favor of the plaintiff and against the proper parties for the amount of the excess.

5. The Fitzgeralds had opposed the motion on the ground that they had a compensable

leasehold interest in the land and that the provision of the lease quoted on page 3, *supra*, was inapplicable to the taking of all of the demised premises. On appeal we affirmed the trial court's granting of the summary judgment to the Church. Fitzgerald v. Alaska State Housing Authority (Russian Orthodox Greek Catholic Church), 497 P.2d 917 (Alaska, June 5, 1972).

6. Quoted *supra*, note 4.

of the amount of the deposit withdrawn by it, and whether the Church was entitled to receive an attorney's fee as part of its costs.

■ In evaluating these issues it is helpful to look to their constitutional background. The fifth amendment to the United States Constitution provides in part: ". . . nor shall private property be taken for public use, without just compensation." The Alaska Constitution has a similar provision.[7] These constitutional requirements necessitates that a property owner be compensated for delays incurred between the dates of the government's taking of property and making payment.[8] If an award were paid immediately upon the taking of the land by the state no damages to the property owner would ensue. But where, due to the necessity of legal proceedings to ascertain fair market value of property, delays ensue, the property owner is entitled to an adequate sum to reimburse him for the loss of use of the money during the period of such delay. To hold otherwise would constitute a taking of the property without just compensation. Therefore, it is well established that the owner of property is entitled to interest from the date of taking to the date of payment.[9]

Alaska has established a procedure by which the condemnor may take immediate possession of the property upon the filing of a declaration of taking with the complaint.[10] The declaration of taking must include: "a statement of the estate or interest in the property" and "a statement of the amount of money estimated by the plaintiff to be just compensation for the property or the interest in it."[11] Upon the filing of the declaration of taking and the deposit of the estimated compensation, the court may enter an order placing the plaintiff in possession of the property.[12]

■ Civil Rule 72(j) provides that where a deposit has been made

. . . the court and attorneys shall expedite the proceedings for the distribution of the money so deposited. . . . If the compensation finally awarded to any defendant exceeds the amount which has been paid to him on distribution of the deposit, the court shall enter judgment against the plaintiff and in favor of that defendant for the deficiency. If the compensation finally awarded to any defendant is less than the amount which has been paid to him, the court shall enter judgment against him and in favor of the plaintiff for the overpayment.[13]

In the subject case a lump sum deposit was made for Parcel 8–5 although the state was aware that there were separate interests owned by the Church and the Fitzgeralds in the property taken. When more than one party has an interest in property and a lump sum is deposited without segregation as to the amount estimated to be just compensation for the various interests, it is generally impossible to receive a speedy withdrawal of the funds. Under those circumstances the property owners necessarily will suffer a delay in receiving compensation for the value of their interest in the property taken.

■ Where the amount to be deposited for the property may readily be segregated

---

7. Alaska Const. art. I, § 18 provides: Private property shall not be taken or damaged for public use without just compensation.

8. *E. g.*, Smyth v. United States, 302 U.S. 329, 353–354, 58 S.Ct. 248, 252–253, 82 L.Ed. 294, 299 (1937); United States v. Highsmith, 255 U.S. 170, 41 S.Ct. 282, 65 L.Ed. 569 (1921); United States v. Rogers, 255 U.S. 163, 41 S.Ct. 281, 65 L.Ed. 566 (1921); Sheckels v. District of Columbia, 246 U.S. 338, 38 S.Ct. 322, 62 L.Ed. 761 (1918); Tillson v. United States, 100 U.S. 43, 25 L.Ed. 543 (1879). *See also* 3 Nichols on Eminent Domain § 8.63 (Sackman 3d ed. rev. 1965).

9. Id.

10. AS 09.55.420, set forth *supra* at note 2.

11. AS 09.55.430(4) & (6), set forth *supra* at note 2.

12. AS 09.55.450.

13. *See also* AS 09.55.440(b), set forth *supra* at note 4.

to reflect such interests, the government is obligated to allocate the deposit among the parcels taken in order to stop the running of interest. In United States v. 355.70 Acres of Land etc.,[14] the property condemned consisted of a number of separate parcels owned by different people. The government deposited a lump sum without giving any indication as to how the money might be allocated among the owners. The court of appeals held that interest could be avoided under the federal declaration of taking statute, 40 U.S.C. § 258a[15] only where the amount paid into court is available for immediate withdrawal by the owner or owners of the separate interests in the land. The court stated that "[a] blanket estimate and deposit covering several parcels and not attended by allocation among them is not an effective tender of any sum for any parcel."[16]

■ While *355.70 Acres of Land* dealt with a lump sum deposit without allocation between owners of various parcels of land, the same rationale should apply when as in the subject case the state knows that there are separate claimants as to land and the structure located on it. As indicated by the testimony of the state's sole witness, its appraisal allocated separate values for the fee interest in the land contained in Parcels 8–5 and 8–5a as well as for the hotel structure and its furnishings and fixtures. It would have been a simple matter to deposit a separate amount for the hotel structure, its furnishings and fixtures. Since this was not done, the property owner should not be deprived of interest from the time of taking of the

property until such time as he receives payment.

We would be confronted with a more difficult problem if there were multiple complex subordinate rights in the property.[17] Such facts would give rise to competing interests between the state and the property owners. The state by necessity could only make a lump sum deposit until legal disposition is made as to a proper allocation. The owners of rights in the property would be deprived of the use of the deposited funds as a result of the delays necessarily incurred before allocation permitted withdrawal. Under such circumstances we might well hold that the Alaska Constitution and statutory procedures go beyond the construction placed on the federal provisions, and require that the unavoidable burden created by such a situation should be borne by the governmental agency taking the property, rather than by the individual forced to relinquish ownership for the public benefit. In any event, we are not faced with such an issue at this time and accordingly need not pass upon it. We limit our ruling to those situations where it is feasible to allocate a deposit between readily recognizable separate interests. If due to no fault of a property owner he is unable to withdraw funds because of such failure to segregate the deposit, he is entitled to interest from the date of taking until payment.

■■ We are further persuaded by the fact that AS 09.55.430(6) quoted, *supra* note 2, requires that the declaration of taking set forth the amount of money estimated to be just compensation for the interest in property. Such an interest may just as well be in structures as land taken, so that

14. 327 F.2d 630 (3d Cir. 1964).

15. AS 09.55.420, AS 09.55.430 and AS 09.-55.440. AS 09.55.440 is quoted *supra* note 4.

16. United States v. 355.70 Acres of Land etc., 327 F.2d 630, 632 (3d Cir. 1964).

17. In a case involving condemnation of commercial property in New York City where there were many lessees with complex sub-ordinate interests in the property, the Second Circuit Court of Appeals refused to require the government to pay interest on deposited amounts which could not be withdrawn until rights were established by the various claimants. United States v. 53¼ Acres of Land etc., 176 F.2d 255 (2d Cir. 1949). *See also* United States v. 287.89 Acres of Land etc., 283 F.Supp. 190 (W.D.Pa.1968).

where the state has adequate knowledge of such separate interests, amounts should be specified for each. In situations where the failure to withdraw funds on deposit in the registry of the court is attributable to the delay of the property owner, no interest should be allowed on the portion of the award so deposited.[18] Here there is no indication that the failure to withdraw more than the $25,000 was attributable to any fault of the Church.

The parties, including the state, stipulated to the withdrawal by the Church of $25,000. The compensation finally awarded to the Church exceeded the amount which was paid to it on distribution of the deposit by $8,700 so that the court was required to enter judgment in favor of the Church in that amount.[19] Prejudgment interest should have been awarded on the $8,700 from the date of taking.[20]

■ As pertains to the issue with reference to the denial of attorney's fees to the Church, Civil Rule 72(k) specifies that:

Costs and attorney's fees . . . shall not be assessed against the plaintiff, unless:

. . . . . .

(2) the award of the court was at least ten (10) percent larger than the amount deposited by the condemning authority or the allowance of the master from which an appeal was taken, or

. . . . . .

(4) allowance of costs and attorney's fees appears necessary to achieve a just and adequate compensation of the owner.

Here the amount awarded was at least 10 percent larger than the amount which the state stipulated could be withdrawn by the Church and further, the allowance of costs and attorney's fees appears necessary to achieve a just and adequate compensation for the owner.

The judgment of the court below is reversed insofar as it failed to award prejudgment interest and attorney's fees to the Church.

---

18. In Atlantic Coast Line R. Co. v. United States, 132 F.2d 959, 962–963 (5th Cir. 1943), failure of property owners to make application to the court for their part was held to constitute a delay attributable to them, thus eliminating the right to interest. *Cf.* United States v. 0.45 Acre of Land etc., 151 F.2d 114 (2d Cir. 1945).

19. Civ.R. 72(j) set forth *supra* at pp. 498–741.

20. Alaska generally allows prejudgment interest. *E. g.*, State v. Phillips, 470 P.2d 266, 274 (Alaska 1970).