STEWART & GRINDLE, INC., Appellant,

v.

STATE of Alaska, Appellee.

Leslie B. PACE, Appellant,

v.

STATE of Alaska, Appellee.

Robert J. ROGERS, Appellant,

v.

STATE of Alaska, Appellee.

Nos. 1941, 1982, 1986.

Supreme Court of Alaska.

June 12, 1974.

As Modified on Rehearing July 22, 1974.

LeRoy J. .Barker, Robison, McCaskey, Strachan & Hoge, Anchorage, for appellants.

Richard P. Kerns, Asst. Atty. Gen., Anchorage, John E. Havelock, Norman C. Gorsuch, Attys. Gen., Juneau, for appellee.

Before RABINOWITZ, Chief Justice, CONNOR, BOOCHEVER and ERWIN, Justices, and DIMOND, Justice Pro Tem.

## OPINION

BOOCHEVER, Justice.

In these three cases consolidated for review, owners of vacant, unimproved land condemned by the state appeal from the denial of their motions for interest, costs and attorney's fees.

The State of Alaska needed Stewart & Grindle's property for the 30th Avenue Couplet Highway Project. On July 29, 1971, the corporation was offered $94,900 for its property. This offer was rejected, and on March 23, 1972, the State filed a condemnation action to acquire the appellant's realty. At the hearing on the States motion for an order of necessity and authority for the taking, the State disavowed any intention to seek immediate possession. The matter was referred to a master, and on August 28, the master filed his report finding the amount of $142,500 to be just compensation for the property. On September 22, after the time for appeal had expired, the parties stipulated to the sum of the master's appraisal pursuant to Civ. R. 72(h)(4). This amount was deposited in the court registry on October 4. On January 24, 1973, the court denied Stewart & Grindle's motion to tax the State with interest from the date of commencement of the suit, appraiser's costs of $2,200, and attorney's fees in the sum of $1,125 incurred during the course of the proceedings.

Leslie Pace and his co-owners, Arthur Guess, Jr., Keith McGranahan, and Belton Stephens, d/b/a Adriatic Land Co., were also casualties of the highway project. These appellants declined the State's offer of $85,000 as compensation for their property, and a complaint was filed on March 23, 1972. After the matter had been referred to a master, but before the master had conducted a hearing as to the value of the property, the State tendered a much more generous offer in the sum of $186,000, which appellants accepted. This sum was deposited in the court registry on December 22. On April 11, 1973, the court denied appellant's motion for interest from the date of filing, for an assessment against the State of appellants' appraisal costs of $1,600, and for attorney's fees of $1,100.

In connection with the same highway project, Robert Rogers was offered $50,000 for his acreage. Upon rejection of its offer, the State instituted condemnation proceedings on March 23, 1972. The task of ascertaining just compensation was referred to a master, and he valued the property at $92,500 in a report filed on September 25. The parties stipulated to that amount on October 19, and on November 14, the State deposited $92,500 in the court registry. On April 11, 1973, the court denied appellant's motion for interest, for costs of an appraiser in the sum of $200, and for attorney's fees of $1,000.

## I. PRE-SETTLEMENT INTEREST

The appellant property owners contend that the court below erred in denying their motions for interest running from the date eminent domain proceedings were instituted to the date of payment into the court registry, upon the amount each accepted as just compensation.

Alaska statutorily provides for the payment of interest in eminent domain actions only where the State enters into immediate actual or constructive possession. If the State requires immediate use of the property,[1] AS 09.55.330 specifies that:

> If an order is made letting the plaintiff into possession, as provided in § 380 of this chapter, the compensation and damages awarded shall draw lawful interest from the date of the order. . . .

And where the State takes immediate legal title by filing a declaration of taking and depositing estimated just compensation into the court pursuant to AS 09.55.440, that statute directs that:

> The compensation shall be ascertained and awarded in the proceeding and established by judgment. The judgment shall include interest at the rate of six per cent per year on the amount finally awarded which exceeds the amount paid into court under the declaration of taking.

There is no statutory provision for payment of interest from the date a condemnation action is instituted where the property owner remains in possession, and it has long been recognized that unless interest is specifically authorized by legislative enactment, it may not ordinarily be assessed against the State in any action.[2] Consequently, the property owners' reliance upon our holding in State v. Phillips[3] is misplaced. In *Phillips*, we ruled that under AS 09.50.280,[4] plaintiffs in a wrongful death action against the State were entitled to interest from the date of death, and not merely from the date of judgment. But AS 09.50.250 authorizes causes of action against the State sounding in tort, contract or quasi-contract exclusively.[5] Since AS 09.50.250 and 09.50.280 were passed together and amended together by the same legislative act,[6] it is clear that AS 09.50.280 was intended to afford a right to pre-judgment interest against the State only where AS 09.50.250 established a substantive cause of action. The two statutes, being *in pari materia*, are to be construed together. One cannot therefore simply imply from our decision in *Phillips* a right to pre-judgment interest in the instant case, in view of the widely-recognized principle that only the legislature has the power to direct the assessment of interest against the sovereign.

---

1. AS 09.55.380 provides, insofar as is here pertinent:

   . . . if not in possession, the court may authorize the plaintiff to take possession of the property and use and possess it until the final conclusion of the proceedings. . . .

2. *See* Fidalgo Island Packing Co. v. Phillips, 147 F.Supp. 883, 886, 16 Alaska 621 (1957), modified 149 F.Supp. 260 (1957), appeal dismissed 253 F.2d 621, 17 Alaska 377 (9th Cir. 1957):

   [T]he state, unless by or pursuant to an explicit statute, is not liable for interest even on a sum certain which is overdue and unpaid.

   *Accord*, United States v. North Carolina, 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336 (1890); Broward County Port Authority v. Arundel Corp., 206 F.2d 220, 222 (5th Cir. 1953); Benson v. City of Los Angeles, 60 Cal.2d 355,

384 P.2d 649, 654, 33 Cal.Rptr. 257 (Cal. 1963); American Oil Co. v. Neill, 90 Idaho 333, 414 P.2d 206, 209 (Idaho 1966); Bond v. State, 70 Wash.2d 746, 425 P.2d 10, 11–12 (Wash.1967).

3. 470 P.2d 266, 274 (Alaska 1970).

4. AS 09.50.280 provides:

   If judgment is rendered for the plaintiff, it shall be for the legal amount found due from the state with legal interest from the date it became due and without punitive damages.

5. AS 09.50.250 states in pertinent part:

   A person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state in the superior court.

6. *See* § 26 ch. 101 SLA 1962 and §§ 1 and 2 ch. 30 SLA 1965.

■ We are also aware that eminent domain proceedings are unique,[7] and are governed by comprehensive rules of procedure applicable to condemnation actions alone.[8] This singularity tends to undermine any deductive extrapolation from the procedure followed in other types of actions.

■ It is well established, however, that the payment of interest is, in appropriate circumstances, a necessary component of constitutionally guaranteed[9] "just compensation."[10] As we stated in Russian Orthodox Greek Catholic Church of North America v. Alaska State Housing Authority:[11]

[The fifth amendment to the U. S. Constitution and art. I, § 18 of the Alaska Constitution require] that a property owner be compensated for delays incurred between the dates of the government's taking of property and making payment. If an award were paid immediately upon the taking of the land by the state no damages to the property owner would ensue. But where, due to the. necessity of legal proceedings to ascertain fair market value of property, delays ensue, the property owner is entitled to an adequate sum to reimburse him for the loss of use of the money during the period of such delay. To hold otherwise would constitute a taking of the property without just compensation [footnote omitted].[12]

Before interest can accrue then, there must be a "taking".[13] Whether the landowners here are entitled to interest turns on whether the commencement of eminent domain proceedings constitutes a constitutionally-compensable appropriation of property.

■ It is the general rule that a taking does not occur until: 1) legal title vests in the State, 2) the State enters into actual possession, or 3) the State takes constructive possession either by causing damage to property or by depriving the owner of full beneficial use of his land.[14] A number of courts have specifically held that interest running from the date of institution of eminent domain proceedings may not be recovered.[15] Most of the decisions which have awarded interest from the commencement of suit turned on statutory interpretation or application.[16]

7. State v. 45,621 Square Feet of Land, 475 P.2d 553, 555 (Alaska 1970).

8. *See* AS 09.55.240 et. seq.; Civ.R. 72(a).

9. The fifth amendment of the United States Constitution provides:
   . . . nor shall private property be taken for public use, without just compensation.
   Its Alaska counterpart, art. I, § 18 similarly states:
   Private property shall not be taken or damaged for public use without just compensation.

10. United States v. Thayer-West Point Hotel Co., 329 U.S. 585, 588, 67 S.Ct. 398, 91 L.Ed. 521, 525 (1945); Phelps v. United States, 274 U.S. 341, 344, 47 S.Ct. 611, 71 L.Ed. 1083, 1085 (1927); *see* cases collected at 3 Nichols on Eminent Domain § 8.63, n. 17 at 151–59 (1965).

11. 498 P.2d 737 (Alaska 1972).

12. *Id.* at 741.

13. *Accord,* United States v. Dow, 357 U.S. 17, 24, 78 S.Ct. 1039, 2 L.Ed.2d 1109, 1115–1116 (1958); Albrecht v. United States, 329 U.S. 599, 602, 67 S.Ct. 606, 91 L.Ed. 532, 537–538 (1947); Fibreboard Paper Products Corp. v. United States, 355 F.2d 752, 754 (9th Cir. 1966).

14. *See* cases collected in Annot., 36 A.L.R.2d 337, § 54 (1954).

15. *See, e. g.,* Henning v. Lake Charles Harbor and Terminal Dist., 387 F.2d 264, 268 (5th Cir. 1968), findings affirmed on appeal after remand, 409 F.2d 932 (5th Cir. 1937); Morton Butler Timber Co. v. United States, 91 F.2d 884, 893 (6th Cir. 1937); Independent School Dist. of Boise City v. C. B. Lauch Const. Co., 78 Idaho 1077, 305 P.2d 1077, 1079–1082 (1957); State v. Peek, 265 P.2d 630, 632 (Utah 1953).

16. *See, e. g.,* Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171 (1923) (relying at least in part on a construction of Idaho statutes); Central Nebraska Public Power & Irr. Dist. v. Fairchild, 126 F.2d 302 (8th Cir. 1942); State v. Coney, 372 P.2d 348 (Hawaii 1962), overruled as to rate of interest, followed as to right to interest, City and County of Honolulu v. Bonded Investment Co., 507 P.2d 1084, 1091–1092 (Hawaii 1973).

The New Jersey Supreme Court, however, has unequivocally held that interest from the *inception* of an eminent domain proceeding is constitutionally compelled, at least where the property condemned by the State is, as here, vacant and unimproved realty. In a provocative departure from established precedent, the court in State v. Nordstrom [17] observed:

A considerable period of time can go by after the filing of the complaint before compensation is paid to the landowner. In the meantime, the landowner remains responsible for the payment of taxes, plus interest payments on a mortgage, if any. These expenses cannot be considered by the commissioners or the jury, nor can they take notice of any rise in value of the property since the filing of the complaint.

\* \* \* \* \* \*

In the present case the Nordstroms' land was vacant, unimproved acreage, which produced no income stream to be applied in abatement against interest. The economic purpose of such investment landholding is readily apparent: By purchasing the unimproved land, the Nordstroms undoubtedly hoped that the land would increase in market value at a rate which would more than offset taxes and interest payment on mortgage loans . . . . . Profit would be generated upon the eventual improvement or sale of the property. By filing a complaint in a condemnation action, however, the State effectively foreclosed the possibility of improving the property or selling it to a third party while the proceedings were pending. . . . The landowner's property is virtually straitjacketed, but tax and mortgage obligations continue unabated.[18]

We find this analysis sensitive to the economic realities of public condemnation. Before the institution of an eminent domain action, possession of unimproved and untenanted property is a desirable economic asset if: 1) the property may appreciate in value; and 2) the owner is afforded the opportunity to improve the property toward whatever end he might desire.[19] Under the Alaska statutory scheme, an owner is deprived of both investment potential and the possibility of future development the moment a condemnation action commences. AS 09.55.330 specifies:

For the purpose of assessing compensation and damages the right to them accrues at the date of issuance of the summons, and its actual value at that date is the measure of compensation of the property to be actually taken. . . . No improvements put upon the property after the date of the service of summons shall be included in the assessment of compensation or damages.

Meanwhile, the owner remains liable for property taxes, mortgage payments, and any other expenses incidental to legal ownership. Indeed, the property is of less value to him in his own name than it would be had the State taken immediate legal possession under a declaration of taking, for at least in the latter case he would be delivered from the burden of the property taxes. If as a matter of constitutional law the property owner is entitled to interest from the moment the State takes legal possession, he should, *a fortiori,* receive interest where he has been deprived of all the economic advantages of legal ownership but is relieved of none of the liabilities.[20]

---

17. 54 N.J. 50, 253 A.2d 163 (1969).

18. *Id.* at 165–166.

19. Unimproved property may also be used for recreational purposes, and what we say here should not be construed to mean that we would not regard recreational use as an economic asset in appropriate circumstances. However, there is no indication in the record that appellants' land is recreational property.

20. *See* Campau v. City of Detroit, 225 Mich. 519, 196 N.W. 527, 529 (1923), where the court, in awarding interest from the date of verdict until the State took actual possession, wrote:

While the purchaser may not take possession until payment is made, it leaves the forced seller in doubtful possession as a tenant by sufferance of the property which he no longer owns, liable to be dis-

Admittedly between the filing of an action and settlement or judgment, the State derived no benefit from unimproved land either. But the State's benefit is irrelevant. The constitutional mandate is framed in terms of just compensation for the *owner*, and just compensation is not conditioned upon receipt of commensurate value by the State. Surely no one would contend that the State need not compensate the owner of improved property for the buildings thereon, because the existing structures did not serve the State's purposes and would have to be demolished. Nor could the State avoid liability for interest from the date of judgment on the grounds that the property was not put to use for some time thereafter, so that the State derived no benefit from ownership. By parallel reasoning, the State may not assert here that it is not liable for interest simply because it derived no benefit from the appellants' property during the period between the filing of the complaint and settlement.

We conclude that the institution of condemnation proceedings constitutes a compensable appropriation of vacant and unimproved land, and that the property owner is constitutionally entitled to interest dating from the institution of such proceedings.

In assessing interest against the State running from the date of institution of suit we are not saddling the State with an unavoidable financial burden. It may toll the running of interest at any time upon any sum it deposits with the court.[21] And the State can minimize the risk of an interest assessment (and avoid the expenses of litigation) by making a reasonable offer which the property owner is likely to accept prior to the institution of legal proceedings.

Had appellants been deriving rents and profits from the use of their land, these sums would, of course, be set off against the interest owed by the State.[22] As the court in Arkansas-Missouri Power Co. v. Hamlin[23] correctly noted:

> Interest as so allowed by the weight of authority is not interest *eo nomine*, that is, interest as such and in the commonly accepted sense, but [is] a substitute or means of measuring the value of the deprivation of the use of the property.
>
> . . . .

Since none of the appellant's land was being productively used, no problem of adjustment arises.

The denial of interest running from the date of commencement of suit is reversed. On remand, the trial judge should calculate the amount of interest due on the amount finally settled upon by each appellant and the State, at the rate of six percent.[24]

---

possessed at the option of the purchaser any weekday in the year. He cannot sell or lease it, nor improve or till it . . . Whatever his future plans and purposes in regard to his property were, they are ended, and if it is unimproved his restricted possession has but little if any value, while the purchaser, having by condemnation proceedings secured the property and compelled him to part with it at the price fixed by and at the time of the hearing and judgment, can at its option rest secure and have the beneficial use of the sum awarded for a year thereafter.

21. Civ.R. 72(j) provides in relevant part: The plaintiff shall deposit with the court any money required by law as a condition to the exercise of the power of eminent domain, and although not so required, may make such a deposit. In such case the court and attorneys shall expedite the proceedings for the distribution of the money so deposited. . . . See also AS 09.55.440. Since the property owner has the use of the money so deposited and so distributed, he is of course not entitled to interest on this amount after the date of deposit.

22. For cases adopting this principle when the state has legal but not actual possession, see State v. Coney, Hawaii, 372 P.2d 348; Plum v. City of Kansas, 101 Mo. 525, 14 S.W. 657 (1890); In re Mayor of City of New York, 60 N.E. 1116 (N.Y.1901); Public Utility Dist. No. 1 v. Washington Water Power Co., 20 Wash.2d 384, 147 P.2d 923 (1944).

23. 288 S.W.2d 14, 17 (Mo.App.1956).

24. In State v. Nordstrom, 253 A.2d 163 (N.J.1969), the court did not enunciate a firm rule that interest must be assessed when-

## II. APPRAISERS' AND ATTORNEY'S FEES

The property owners also assign as error the refusal of the court below to tax their attorney's and appraisers' fees against the State.

Civil Rule 72(k) governs the award of costs and attorney's fees in eminent domain proceedings. The rule provides in pertinent part:

> Costs and attorney's fees incurred by the defendant shall not be assessed against the plaintiff, unless
>
> .    .    .    .    .    ..
>
> (2) the award of the court was at least ten (10) percent larger than the amount deposited by the condemning authority or the allowance of the master from which an appeal was taken, or
>
> .    .    .    .    .    .
>
> (4) allowance of costs and attorney's fees appears necessary to achieve a just and adequate compensation of the owner.

The property owners contend that these cases should be governed by Civil Rule 72(k)(2) despite its apparent facial inapplicability. Although that provision provides for the award of costs and attorney's fees only after a court judgment is obtained which is at least ten percent higher than the deposit into the court or the appraisal of the master appointed by the court, the appellant property owners argue that it is the manifest policy of the rule to induce the condemning authority to make a reasonable offer early in the condemnation process. Since awarding costs and attorney's fees when the stipulated settlement is at least ten per cent greater than the initial offer would also serve as an incentive to the State to make a reasonable offer at the outset, the appellants conclude that Civil Rule 72(k)(2) should be controlling.

We must reject this reasoning despite the invocation of an intelligent policy. Just as they have refused to assess interest against the state,[25] courts have also traditionally declined to tax litigation expenses and attorney's fees against the sovereign in the absence of express statutory authority.[26] Civil Rule 72(k)(2) specifies the conditions under which costs and attorney's fees are to be awarded; where these conditions remain unfulfilled, the common law rule continues to govern.

We also agree with the appellee that the appellants' reliance on Civil Rule 82(a)[27] is misplaced. Civil Rule 72(a) makes the provisions of Civil Rule 72 the exclusive procedure in eminent domain, except where otherwise expressly provided:

> The procedure for the condemnation of property under the power of eminent domain shall be governed by these rules, except as otherwise provided in this rule.

However, we hold that under the circumstances presented by the cases at bar, the property owners are entitled to recover attorney's and appraisers' fees under Civil Rule 72(k)(4) which provides for such recovery when necessary to assure "just and

---

ever vacant and unimproved land is taken. The court instead professed a desire to proceed on a case-by-case basis. Since we cannot conceive of any situation in which owners of unimproved property would *not* be entitled to interest from the date of suit (with appropriate set-offs for rents and profits), we reject such an approach.

We also note that the court in *Nordstrom* affirmed a judgment of interest awarded only upon the difference between the verdict and the highest assessment of the State's appraiser. Such an approach has little to recommend it. The owners of vacant and unimproved property are deprived of *all* economic benefits of ownership; consequently, interest should be awarded upon the entire monetary equivalent of the property— i. e., upon the entire amount of settlement.

25. *See* text accompanying n. 2 *supra*.

26. Henning v. Lake Charles Harbor & Terminal Dist., 387 F.2d 264, 268 (5th Cir. 1968); Leadville Water Co. v. Parkville Water District, 164 Colo. 362, 436 P.2d 659, 660 (1967); Multnomah County v. Burbank, 235 Or. 616, 386 P.2d 444, 445–448 (1963); City of Buffalo v. J. W. Clement Co., 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895, 908 (1971), motions to clarify and reargue denied, 29 N.Y.2d 640, 273 N.E.2d 315, 320 (1971).

27. Civ.R. 82(a) relates to the award of attorney's fees in civil actions.

adequate compensation". We are in agreement with the Court in New Jersey Turnpike Authority v. Bayonne Barrel & Drum Co.,[28] which, in assuming the discretionary authority to tax attorney's and appraisers' fees against the state, wrote:

> Under present-day conditions the traditional approach of requiring a condemnee, in all cases, to bear the expense of legal fees and expert witnesses is inequitable and an unfair burden placed upon the landowner . . . . If the average defendant is in court, it is usually because he has committed an act of commission or omission. A condemnee becomes a litigant merely because he owns land that the sovereign wishes to acquire. The sovereign must pay just compensation for such land. Does a condemnee receive just compensation or is he "made whole" if he must expend large sums of money to insure that he gets a fair price for his land? We think not.[29]

■ We believe that Rule 72(k)(4) when construed in the framework of the "just compensation" clauses of the United States and Alaska constitutions[30] *does* entitle the property owner to be made whole for expenses necessarily incurred in connection with the condemnation of his property.[31] Without such a rule, the State forces a property owner to pay a greater portion of the costs of a public project than any other taxpayer must pay by afflicting him with the unavoidable expenses of condemnation. Placing such a burden on the property owner is no more than just than assessing a levy against him but no others.

■ We think it is apparent that the appraisers' and attorney's fees were "necessarily" incurred in these cases. Each appellant's property consisted of a large tract of unimproved land. Parcels of land the size of those involved here do not have a readily ascertainable market value, as do, for example, subdivision lots where numerous transactions in lots of comparable size and quality establish the appropriate market value with some accuracy. Therefore, it is evident that the services of professional appraisers were essential before the property owners could determine whether to accept the State's offer. And the grossly inadequate amount of the State's initial tender could reasonably have led the property owners to believe that it would be necessary to retain an attorney in order to obtain just compensation for the taking of their property.

■ We do not agree with the State's assertion that to allow attorney's and appraisers' fees in the case at bar "would be tantamount to granting costs and attorney's fees in every condemnation action." Where the property to be taken has a readily ascertainable market value, or is worth too little to warrant a professional appraisal, an appraiser's fee could not be said to be "necessary", and the property owner would not be entitled to compensation for such an expense. Similarly, where the property has a readily ascertainable market value and the State has offered at least that amount, any attorney's fees subse-

---

**28.** 110 N.J.Super. 506, 266 A.2d 164 (1970). *Bayonne Barrel & Drum* was later overruled on statutory grounds. State v. Mandis, 119 N.J.Super. 59, 290 A.2d 154, 155 (1972), pet. certif. denied, 61 N.J. 156, 293 A.2d 386 (1972). New Jersey has no statutory counterpart to Civil Rule 72(k)(4).

**29.** *Id.* at 166. *See also* Denver Joint Stock Land Bank v. Board of County Commissioners, 105 Colo. 366, 98 P.2d 283 (Colo. 1940); Jacksonville Expressway Authority v. De Pree Co., 108 So.2d 289, 294 (Fla.1959); Dade County v. Brigham, 47 So.2d 602, 604–05 (Fla.1950); Westwego Canal & Terminal

Co. v. Louisiana Highway Comm., 200 La. 990, 9 So.2d 389, 392–95 (1942), *Limited* to statutorily provided costs State v. Salemni, 249 La. 1078, 193 So.2d 252, 254–255 (1966).

**30.** *See supra* n. 12.

**31.** We recognize that the weight of authority does not provide for allowance of such expenses; *see* 4A Nichols on Eminent Domain, § 14.249. But we are construing a pertinent Alaska rule of eminent domain procedure which was not before other courts previously passing on this issue.

quently incurred would not be necessary in order to obtain just compensation, and would accordingly be disallowed.

We are confident that in the administration of Civil Rule 72(k)(4), our trial judges will be vigilant to prevent abuses, and to insure that the State is not taxed with needlessly-incurred expenses.

The denial of an award of appraisers' and attorney's fees is reversed, and these cases are remanded to the superior court in order to establish the reasonable value of services rendered by appellants' appraisers and attorney.

Reversed and remanded.

FITZGERALD, J., not participating.

## ON PETITION FOR REHEARING

The State has petitioned for a rehearing seeking clarification of that portion of the court's opinion which reads:

> Civil Rule 72(a) makes the provisions of Civil Rule 72 the exclusive procedure in eminent domain, except where otherwise expressly provided . . .

Rule 72(a) states:

> The procedure for the condemnation of property under the power of eminent domain shall be governed by these rules, except as otherwise provided in this rule.

Petitioner correctly points out that in State v. 1,163 Acres, More or Less, Chuckwm, Inc., 449 P.2d 776, 778 (Alaska 1968), Rule 72(a) has been construed as follows:

> The phrase "these rules" refers to all of the other rules of the Alaska Rules of Court Procedure and Administration. The phrase "except as otherwise provided in this rule" means that Civil Rule 72 shall govern eminent domain proceedings. Where a specific procedure is not provided by Civil Rule 72, then any of the other rules of practice and procedure are available, to the extent that they may be applicable.

We hereby affirm this construction of Rule 72(a), and disavow any inferences which might otherwise be drawn from the quoted portion of our opinion in Stewart &

Grindle, Inc., v. State. The portion of the opinion in question concerned the award of attorney's fees in condemnation cases. Since Rule 72(k)(2) specifically provides for the circumstances under which such fees are to be awarded, the result of the opinion remains the same.

The petition for rehearing is granted, and the opinion is modified to the extent provided above.