SAMISSA ANCHORAGE, INC., an Alaska corporation, d/b/a North Star Adolescent Hospital, Appellant,

v.

The DEPARTMENT OF HEALTH AND SOCIAL SERVICES, STATE OF ALASKA; Karen Perdue, in her official capacity as the Commissioner of the Alaska Department of Health and Social Services; The Medicaid Rate Advisory Commission, State of Alaska; and Jack Nielson, in his official capacity as the Executive Director of the Medicaid Rate Advisory Commission, Appellees.

No. S–10258.

Supreme Court of Alaska.

Oct. 25, 2002.

John F. Sullivan, Inslee, Best, Doezie & Ryder, P.S., Bellevue, Washington, for Appellant.

Julie E. Bryant, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

The State of Alaska made additional payments to a medical services provider after the provider brought successful administrative claims against the state to increase the Medicaid reimbursement rates payable under AS 47.07.070. Does AS 09.50.280 require the state to pay the provider "prejudgment interest"? Because the provider's claims under AS 47.07.070 are not covered by AS 09.50.250's waiver of sovereign immunity, we hold that the state is not liable for prejudg-

ment interest under AS 09.50.280. We therefore affirm the superior court's denial of the medical service provider's claims for prejudgment interest.

## II. FACTS AND PROCEEDINGS

Samissa Anchorage, Inc. (d/b/a North Star Hospital or North Star) provided psychiatric services to state Medicaid patients between 1993 and 1996. North Star challenged the 1993, 1994, and 1995 Medicaid reimbursement rates of the Department of Health and Social Services (the department) in one administrative claim and challenged the 1996 rate in another.[1] North Star ultimately appealed both challenges to the commissioner of the department under 7 Alaska Administrative Code (AAC) 43.703 and .704.[2] North Star requested "prejudgment" interest in both challenges.[3]

The department's June 1999 final decision in the rate appeals for years 1993, 1994, and 1995 concluded that the rates from those years should be recalculated because North Star was entitled to additional reimbursement. The decision did not address North Star's prejudgment interest claim. North Star filed a superior court administrative appeal in July 1999 to compel the department to reimburse North Star the amount that the commissioner had determined North Star was underpaid; North Star requested, among other things, prejudgment interest.

In late 1999 the state issued North Star two checks totaling $723,295 to reimburse North Star under the adjusted payment rate for the medical services North Star had rendered in 1993, 1994, and 1995. The reimbursement did not include prejudgment interest.

The department issued its final decision in North Star's 1996 rate appeal in February 2000. This time, the commissioner expressly denied North Star's prejudgment interest claim, stating that no "statute or regulation authorizes an award of prejudgment interest against the state in administrative proceedings related to Medicaid rates pursuant to AS 47.07 or the Administrative Procedures Act." North Star filed a superior court administrative appeal from this ruling in March 2000. In May 2000 North Star received a check for $959, to reimburse it under the adjusted payment rate for the 1996 services. The reimbursement did not include prejudgment interest.

Superior Court Judge Milton M. Souter consolidated North Star's two appeals. North Star argued that it was entitled to prejudgment interest under AS 09.50.250 and .280 because its payment rate claims arose out of an express contract with the state, and that the state waived sovereign immunity for contract claims under AS 09.50.250[4] and for prejudgment interest on those contract claims under AS 09.50.280.[5] North Star argued that it was therefore entitled to pre-

1. The department determines the rate at which health service providers are reimbursed for services rendered to state benefits recipients. AS 47.07.070 states, in part: "(a) The department shall set the prospective rate of payment to a health facility under this chapter ... based on a fair rate for reasonable costs incurred by the facility."

2. To challenge payment rate determinations, providers may request reconsideration of the rate by the executive director of the Medicaid Rate Advisory Commission Staff under 7 AAC 43.701 (2002). Providers may file an administrative appeal to the commissioner of the department under 7 AAC 43.703 (2002) to challenge the executive director's determination in lieu of or after the executive director's reconsideration. The commissioner assigns the appeal to a hearing officer under 7 AAC 43.704 to make a preliminary recommendation after conducting a hearing.

3. The parties, the department, and the superior court have consistently referred to North Star's interest claim as one for "prejudgment interest." Although the administrative and judicial procedure North Star followed here did not call for entry of a "judgment" as that term is usually used, we will refer here to North Star's interest claim as one for prejudgment interest.

4. AS 09.50.250 states, in part:
 A person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state in a state court that has jurisdiction over the claim. A person who may present the claim under AS 44.77 may not bring an action under this section except as set out in AS 44.77.040(c).

5. AS 09.50.280 states: "If judgment is rendered for the plaintiff, it shall be for the legal amount found due from the state with interest as provided under AS 09.30.070 and without punitive damages."

judgment interest on its contract claims. The department argued that the state did not waive sovereign immunity under AS 09.50.250 for payment rate challenges. The department asserted that North Star brought its claim under the administrative procedures prescribed for challenges of payment rates calculated under AS 47.07.070, and consequently contended that North Star was not entitled to prejudgment interest.

The superior court reversed the administrative denial of prejudgment interest. It held that North Star's Medicaid provider agreement is a contract. It further held that "AS 09.50.250 expressly authorizes prejudgment interest in contract cases regardless of whether they are first required to be pursued in administrative proceedings." The superior court remanded to the department for award of prejudgment interest.

The department petitioned for rehearing and Superior Court Judge Sharon L. Gleason, to whom the case was reassigned after Judge Souter retired, vacated the remand order to the extent it allowed North Star to recover prejudgment interest. Judge Gleason's decision on rehearing determined that North Star could not have brought an action under AS 09.50.250 because health care providers must challenge Medicaid payment rates under 7 AAC 43.703 [6] and .704.[7] Judge Gleason's decision reasoned that those sections of the administrative code establish

---

6. 7 AAC 43.703 states, in part: "(a) A party aggrieved by a written determination of the executive director under 7 AAC 43.701(a) ... may request reconsideration under 7 AAC 43.701(b) or may file an administrative appeal to the commissioner."

7. 7 AAC 43.704 provides the procedure by which the commissioner assigns the administrative appeal to a hearing officer; the hearing officer conducts a hearing; the hearing officer proposes a decision; and the commissioner issues a decision or refers the appeal back to the hearing officer.

8. 924 P.2d 432 (Alaska 1996).

9. Judge Gleason's decision on rehearing stated:

North Star did not and could not have maintained an independent contract action under AS 09.50.250 regarding the Medicaid ratemaking decisions of the Department of Health and Social Services. Instead, health care providers who dispute Medicaid rate determinations

---

procedures that involve the Department of Health and Social Services, not the Department of Administration as AS 09.50.250 and .280 require.

Applying our decision in *Danco Exploration, Inc. v. State, Department of Natural Resources*,[8] the superior court ruled that "administrative appeals are not encompassed within AS 09.50.250, and therefore prejudgment interest is not available under that statutory provision in this administrative appeal." The superior court further held that no other statutory waiver of sovereign immunity allowing an award of prejudgment interest against the state applied. The superior court vacated the original remand order and affirmed the department's decision denying prejudgment interest.[9]

North Star appeals.

## III. DISCUSSION

### A. Standard of Review

 We independently review administrative agency decisions when the superior court sits as an intermediate court of appeal.[10] "We apply the substitution of judgment test to legal questions where no agency expertise is involved, such as questions of statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge and experience."[11]

---

"must pursue administrative procedures provided by [regulation]," including the right to judicial review. 7 AAC 43.703–704. The Alaska Supreme Court has ruled in *Danco* that administrative appeals are not encompassed within AS 09.50.250, and therefore prejudgment interest is not available under that statutory provision in this administrative appeal. 924 P.2d at 434. No other statutory provision authorizes an award of prejudgment interest against the State in administrative proceedings pursuant to AS 47.07. The State's sovereign immunity can only be waived by the legislature, not the court, and no waiver of the state's immunity with respect to the recovery of prejudgment interest has occurred in this administrative review proceeding.

(Footnotes omitted.)

10. *Justice v. RMH Aero Logging, Inc.*, 42 P.3d 549, 552 (Alaska 2002).

11. *Id.* (internal quotation marks and citation omitted).

## B. North Star Was Not Entitled To Recover Prejudgment Interest.

North Star argues that it brought its payment rate claims under AS 09.50.250, making it eligible for prejudgment interest under AS 09.50.280. It asserts that sections .250 and .280 allow prejudgment interest in this case because North Star brought contract or quasi-contract claims. It contends that the department erred because it did not recognize North Star's contractual relationship with the department and asserts that there was indeed a contractual relationship. Alternatively, North Star argues that it has quasi-contractual claims based on unjust enrichment. It asserts that it was unjustly denied the correct rate for its services and that its claims therefore lie within sections .250 and .280. Finally, North Star argues that it is entitled to prejudgment interest because it exhausted administrative remedies under section .250; because Alaska courts award prejudgment interest as part of compensatory damages; and because the plain language of AS 47.07.070(b)(1) evidences legislative intent to require the department to reimburse health care facilities for the time value of the money the department incorrectly withheld.

The department argues that North Star could only bring its payment rate claims under AS 47.07.070, the statute which governs the Department of Health and Social Services' rate-making decisions. The department asserts that our decision in *Danco*[12] precludes North Star's prejudgment interest claims.

### 1. Only the legislature can authorize prejudgment interest awards against the state.

■ "[U]nless interest is specifically authorized by legislative enactment, it may not ordinarily be assessed against the State in any action."[13] In other words, only the legislature can waive the state's sovereign immunity and authorize an award of prejudgment interest against the state. The question here is whether the legislature au-

thorized prejudgment interest awards in payment rate challenges.

Alaska Statute 09.50.250 waives sovereign immunity and allows actionable claims against the state that sound in contract, quasi-contract, or tort. Alaska Statute 09.50.280 authorizes interest awards against the state for actions brought under section .250. We noted in *Stewart & Grindle, Inc. v. State* that "[s]ince AS 09.50.250 and 09.50.280 were passed together and amended together by the same legislative act, it is clear that AS 09.50.280 was intended to afford a right to pre-judgment interest against the State only where AS 09.50.250 established a substantive cause of action."[14] Thus, this case turns on whether North Star brought or could have brought an action under section .250.

### 2. North Star is not entitled to prejudgment interest because payment rate challenges are not cognizable claims under AS 09.50.250.

■ We rejected a claim similar to North Star's in *Danco*, the case that controls here. There we held that "[administrative] appeals [under 11 AAC 02.010] are not encompassed within AS 09.50.250."[15] Judge Gleason in this case reasoned that the administrative procedures for challenging payment rate decisions were similar to the administrative procedures for challenging the Department of Natural Resources decision that we reviewed in *Danco*. The superior court held that "North Star did not and could not have maintained an independent contract action under AS 09.50.250 regarding Medicaid rate-making decisions of the Department of Health and Social Services."

North Star attempts to distinguish *Danco* by contending that North Star's claims, unlike Danco's, sound in contract and therefore lie within section .250. North Star argues that its agreement with the department contains the necessary elements of a contract, including a description of the services to be provided, the conditions of payment, and an

---

12. 924 P.2d 432 (Alaska 1996).

13. *Stewart & Grindle, Inc. v. State*, 524 P.2d 1242, 1245 (Alaska 1974).

14. *Id.* (internal footnote omitted).

15. 924 P.2d at 434.

indemnity and hold harmless provision. North Star asserts that both sides are federally mandated to enter into the agreement [16] and that the right to sue for money owed originates with the agreement. It consequently reasons that "[t]he State's failure to pay the full rate required by the regulations and statutes incorporated into the provider agreement constitutes a breach of contract." Finally, North Star argues that courts in other jurisdictions have deemed the Medicaid health care provider agreement a contract.

The department responds that North Star's payment rate claims are not contract claims. Alternatively, the department asserts that it is irrelevant whether the provider agreement between North Star and the department is a contract because our decision in *Danco* prevented North Star from bringing an action under section .250.

*Danco* involved a state lease sale in which Danco Exploration, Inc. submitted a winning bid.[17] After it was awarded the leases, Danco missed a payment deadline by one day and consequently was denied the leases. Danco appealed the rescission to the commissioner of the Alaska Department of Natural Resources (DNR) and later appealed the commissioner's decision to the superior court. The superior court reversed the commissioner's decision and ordered that the leases be issued to Danco. Danco moved for an award of interest on its initial bid deposit and on the balance of its bonus payment. The superior court refused to award interest and Danco appealed.[18]

We reiterated what we had stated in *Stewart & Grindle*, that only the legislature can authorize awards of interest against the state and that "[s]ection .280 only applies where AS 09.50.250 establishes a substantive cause of action." [19] Danco argued on appeal that its claims sounded in either tort or contract, and therefore came within section .250.[20]

We noted that 11 AAC 02.010 provided the administrative procedures through which a lease bidder could challenge a decision of the DNR.[21] We ultimately held that "11 AAC 02.010 appeals are not encompassed within AS 09.50.250. A party who brings an appeal from a commissioner's decision to the superior court is bound by the result of such an appeal and may not maintain a separate action under section .250." [22]

*Danco* controls here.[23] With regard to waiver of sovereign immunity under AS 09.50.250, we find no reason to distinguish between the administrative procedures here and those we reviewed in *Danco*. Accordingly, North Star could not have maintained a section .250 action because its remedy was to pursue the administrative procedure provided in 7 AAC 43.703 and .704; this procedure required that North Star challenge the commissioner's denial by administrative appeal to the superior court, and did not permit a separate action under section .250. Although North Star refers us to cases from other jurisdictions that allow prejudgment interest,

---

**16.** 42 C.F.R. § 431.107(b) (2001) states, in part:

Agreements. A State plan must provide for an agreement between the Medicaid agency and each provider or organization furnishing services under the plan in which the provider or organization agrees to: (1) Keep any records necessary to disclose the extent of services the provider furnishes to recipients; (2) On request, furnish to the Medicaid agency, the Secretary, or the State Medicaid fraud control unit ... any information maintained under paragraph (b)(1) of this section and any information regarding payments claimed by the provider for furnishing services under the plan; (3) Comply with the disclosure requirements specified in part 445, subpart B of this chapter; and (4) Comply with the advance directives requirements for hospitals....

**17.** 924 P.2d at 433.

**18.** *Id.* at 433–34.

**19.** *Id.* at 434 (citing *Stewart & Grindle*, 524 P.2d at 1245).

**20.** We determined that "[s]ince Danco did not purport to bring this claim under section .250 its claim must be that it could have done so, and that it would be unduly technical to deny it interest based on a mere matter of form." *Id.*

**21.** *Id.* (citation omitted).

**22.** *Id.*

**23.** The department is correct that we did not need to decide in *Danco* whether Danco and DNR had a contract. Similarly, we need not decide whether North Star and the department had a contract.

our previous reading of AS 09.50.250 mandates our rejection of North Star's prejudgment interest claims.

### 3. North Star has not demonstrated any other basis for recovering prejudgment interest.

Alaska Statute 09.50.250 expressly permits one with a contract claim against the state to bring an action in state court, and claims under AS 44.77 may be brought under AS 09.50.250 if more than one year has elapsed without a departmental decision after the claimant presents its AS 44.77 administrative claim.[24]

But North Star's disputes with the department about the medical provider reimbursement rate were not contractual claims and were not brought as contract actions in state court; they concerned administrative ratemaking and were brought as administrative disputes. Because these rate challenges did not lie within section .250, it does not matter, as North Star argues, whether North Star had a contract with the state, whether North Star exhausted administrative remedies, or whether its claims can be characterized as ones for unjust enrichment. North Star was required to bring its claims under AS 47.07. Alaska Statute 47.07 does not itself award prejudgment interest and is not listed in section .250's waiver of sovereign immunity.

Alaska Statute 09.50.250 does encompass some types of claims medical services providers might bring. It provides that "A person who may present [a contract claim] under AS 44.77 may not bring an action under [AS 09.50.250] except as set out in AS 44.77.040(c)."[25] Alaska Statute 44.77.040(c)

permits a medical services provider that contends that the department has not decided within one year an administrative claim presented under AS 44.77.010 to "bring an action ... under AS 09.50.250."[26] Because section .250 contemplates such a claim and AS 44.77.040(c) expressly provides for it, a provider whose AS 44.77.010 administrative claim is undecided for more than one year after it is submitted and who brings a successful action against the state would be eligible to recover prejudgment interest under AS 09.50.280. But that is not the type of claim North Star has, and that is not how North Star proceeded here. Instead, North Star challenged the payment rate determination that the department made under AS 47.07.070. Likewise, it brought its claims as administrative disputes in the Department of Health and Social Services under 7 AAC 43.703 and not as a superior court "action" under AS 44.77.040(c), or as claims to the Department of Administration. North Star's claims were therefore not ones "as set out in AS 44.77.040(c)," and were therefore not within section .250.[27]

North Star understandably emphasizes the injustice and inequity that will result if its interest claims are denied. It also asserts that denial will encourage the department to "drag out these Medicaid rate appeals for as long as possible" while the state "has the interest-free use of the funds." Our decision insulates the department from prejudgment interest claims resulting from delayed ratemaking decisions, to the detriment of service providers whose rate-making requests are delayed. But such concerns are better addressed to the legislature, and do not alter our reading of AS 09.50.250 and .280. More-

24. AS 09.50.250; AS 44.77.040(c).

25. AS 09.50.250.

26. AS 44.77.040(c) provides:

If the claimant does not accept the decision of the Department of Administration, the claimant may obtain judicial review of the decision in accordance with AS 44.62.560–44.62.570. A claimant may also bring an action under AS 09.50.250–09.50.300 at any time after one year has elapsed since the presentation of the claim under AS 44.77.010, if no decision has been made by the department.

27. In a footnote, the superior court remarked that North Star could not rely on AS 44.77.040. The court correctly noted that:

[Alaska Statute 44.77.040] does allow an action under AS 09.50.250 with regard to decisions of the *Department of Administration* when that state agency has delayed making a payment decision on a claim, including a Medicaid claim, that had been presented to it for over one year.... [T]hat statutory provision is inapplicable to the review of a different action by a different state agency—a Medicaid ratemaking determination by the Department of Health and Social Services.

over, the legislature provided a remedy for delay by establishing a grievance reporting procedure under AS 47.07.075(b)(3).[28] Its adoption of this remedy implies that the legislature recognized the possibility of delay, but chose to deal with it by adopting the reporting procedure rather than permitting interest claims against the state. We conclude that the legislature did not intend prejudgment interest to be a remedy for delay.

## IV. CONCLUSION

Because AS 09.50.250 does not apply to administrative appeals brought under AS 47.07.070, we AFFIRM the superior court decision that affirmed the department's denial of North Star's prejudgment interest claims.

---

**28.** AS 47.07.075(b)(3) states in pertinent part:
 [I]f either time limit set under (1) or (2) of this subsection is not met, the department shall report the noncompliance to the legislature and the governor ... with an explanation of the length of delay, reasons for the delay, and proposed corrective action by the department to ameliorate the causes of delay.