GREATER ANCHORAGE AREA BOROUGH, a Municipal Corporation, Appellant,

v.

10 ACRES MORE OR LESS IN the SW ¼ NE ¼ SE ¼, SEC. 6, T12N, R3W, S.M., et al., Appellees.

ALASKA VETERINARY CLINIC AND BOARDING KENNELS, INC., Cross-Appellant,

v.

GREATER ANCHORAGE AREA BOROUGH, a Municipal Corporation, Cross-Appellee.

Nos. 2706 and 2707.

Supreme Court of Alaska.

May 6, 1977.

---

Richard A. Weinig, Asst. Municipal Atty., Anchorage, Richard Garnett, Municipal Atty., Anchorage, for appellant and cross-appellee.

Karl L. Walter, Jr., Groh, Benkert & Walter, Anchorage, for appellees and cross-appellant.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR, ERWIN and BURKE, Justices.

## OPINION

BURKE, Justice.

In this case, the Greater Anchorage Area Borough (GAAB)[1] appeals the superior court's award of attorney's fees to the condemnees in an eminent domain proceeding. The cross-appellant, Alaska Veterinary Clinic and Boarding Kennels Inc., in addition to contesting the GAAB's power to take its land at all, questions the superior court's use of Rule 82, Alaska Rules of Civil Procedure, in calculating the amount of attorney's fees to be awarded.

On March 3, 1970, the Borough filed a complaint and declaration of taking to acquire two parcels of land necessary for the construction of a school. Alaska Veterinary Clinic owned one of these parcels, and Pago Inc. owned the other. The Borough deposited $24,500 as estimated just compensation for Alaska Vet's land and $26,500 for the property owned by Pago.

Soon after the filing of the complaint, Alaska Vet filed a responsive pleading which challenged the Borough's right to exercise the right of eminent domain by a declaration of taking. The superior court upheld the Borough's authority to take land for a school and found that these two parcels of land were in fact necessary for the school's construction.

Alaska Vet and Pago rejected the Borough's initial offers of compensation, and on May 31, 1972, a master awarded $41,000

to Alaska Vet as just compensation for its parcel and $42,000 to Pago for its property. The Borough promptly deposited additional funds corresponding to the master's award and then appealed the award. Pago also appealed the master's award, and although Alaska Vet did not appeal, neither did it acknowledge on the record its willingness to accept the master's award.

The case was heard by a superior court jury in early June, 1975, and during trial, both Alaska Vet and Pago offered testimony of an appraiser as to the worth of their property. The jury awarded $34,125 to Alaska Vet (17% less than the master's award) and $40,250 to Pago (4% less than the master's award.)

Alaska Vet and Pago moved for actual costs and attorney's fees incurred prior to and during the trial. The trial court granted the request for fees, based on Rule 72(k)(4), Alaska Rules of Civil Procedure, but then proceeded to calculate the amount of attorney's fees to be awarded pursuant to Rule 82, which provides a formula for awarding partial compensation to prevailing parties. Both parties were awarded their full costs which included reimbursement for their appraisers' fees.

We turn first to the threshold question of the Borough's right to condemn land, raised in Alaska Vet's cross-appeal. In support of its declaration of taking, the Borough cited several eminent domain statutes, none of which expressly authorized the Borough to condemn land. Judge Occhipinti, however, found that the Borough's authority to condemn land for a school could be inferred from this statutory scheme, and we agree with his conclusion. The two statutes upon which we base our finding are AS 09.55.420,[2] which authorizes a municipality

1. Subsequent to the commencement of this litigation, the Greater Anchorage Area Borough and the City of Anchorage merged to form the present Municipality of Anchorage.

2. Prior to amendment in 1973, AS 09.55.420 provided:

    *Declaration of taking by state or first class city.* Where a proceeding is instituted under §§ 240–460 of this chapter by the state, it

    may file a declaration of taking with the complaint or at any time after the filing of the complaint, but before judgment. Where a proceeding is instituted under §§ 240–460 of this chapter by a municipality in the exercise of eminent domain for street or highway, off-street automobile parking facilities, school, sewer, water, telephone, electric, other utility, and slum clearance purposes or use granted to cities of the first class, the govern-

**272**

to condemn land and AS 09.55.240(a)(3),[3] which allows the right of eminent domain to be exercised for public buildings for a borough or school district.

■ AS 09.55.420 provides that when a condemnation proceeding is instituted by a *municipality* in the exercise of eminent domain, the governing body of the municipality may exercise the power through the filing of a declaration of taking. Although Alaska Vet argues that before merger the Borough was more like a county than a city and thus could not qualify as a municipality under the statute, other eminent domain provisions indicate to the contrary. For example, AS 09.55.240(a)(3) allows land to be taken for the following public uses:

. . . public buildings and grounds *for the use of an organized or unorganized borough,* city, town, village, school district, *or other municipal division,* whether incorporated or unincorporated; . . . (emphasis added)

Under this provision, the term "municipal division" clearly encompasses boroughs as well as cities.[4] Therefore, for purposes of the eminent domain statute, a borough is a municipal division and, as a municipality, could take land under AS 09.55.420.

Furthermore, although the legislative history of AS 09.55.420 is not entirely illuminating, the Senate Journal of Proceedings for 1966 does indicate that two references to "first class city" in House Bill 418, now AS 09.55.420, were deleted, and the term "municipality" was substituted.[5] In all probability this reflects an intention to broaden the scope of the statute to include municipal divisions other than first class cities.

The second provision from which the Borough's authority to condemn land can be inferred is AS 09.55.240(a)(3), which lists among those permissible uses for land taken by eminent domain, public buildings for the use of an organized or unorganized borough or school district. The Borough argues persuasively that this statute would not have any meaning of the Borough were not authorized to take the land required for borough buildings, for what other body would have the authority to condemn land for those buildings? Moreover, at the time of the taking, all first and second class boroughs were deemed school districts and were expressly authorized to "establish, maintain, and operate a system of public

---

ing body of the municipality may exercise the power through the filing of a declaration of taking with the complaint or at any time after the filing of the complaint, but before judgment. The declaration of taking procedure may not be used with relation to the property of rural electrification or telephone cooperatives or nonprofit associations receiving financial assistance from the federal government under the Rural Electrification Act; provided, however, that no declaration of taking for off-street parking purposes may be used unless there has been public notice by publication in a newspaper of general circulation in the area for not less than once a week for four consecutive weeks followed by a full and complete public hearing held before the governing body of the first class city or municipality.

3. AS 09.55.240(a)(3) provides:
*Uses for which authorized; rights-of-way* (a) The right of eminent domain may be exercised for the following public uses:
(3) public buildings and grounds for the use of an organized or unorganized borough, city, town, village, school district, or other municipal division, whether incorporated or unin-

corporated; canals, aqueducts, flumes, ditches, or pipes conducting water, heat, or gas for the use of the inhabitants of an organized or unorganized borough, city, town, or other municipal division, whether incorporated or unincorporated; raising the banks of streams, removing obstructions from them and widening, deepening, or straightening their channels; roads, streets, and alleys, and all other public uses for the benefit of an organized or unorganized borough, city, town, or other municipal division whether incorporated or unincorporated, or its inhabitants, which may be authorized by the legislature;

4. This usage is repeated in AS 09.55.260 which provides in part:
*Private property subject to be taken.* The private property which may be taken under §§ 240–460 of this chapter includes
(2) lands belonging to the state or to an organized or unorganized borough, city, town, village, or other municipal division, whether incorporated or unincorporated, not appropriated to a public use;

5. 1966 Senate Journal, March 26, 1966, p. 611.

schools on an areawide basis."[6] Again, a statute allowing the exercise of eminent domain for public buildings for school districts would be ineffectual unless the Borough, as a school district, were authorized to condemn the land for such buildings.

In *Ashby v. Juneau*, 174 F. 737, 3 Alaska Fed. 433 (9th Cir. 1910), the court used a similar analysis in holding that a statute enumerating "roads, streets, and alleys" as permissible public uses for land taken by eminent domain could be interpreted to confer upon the city of Juneau the power to take land for widening a street. The public use provision from which the court inferred the city's power to condemn was virtually identical to AS 09.-55.240(a)(3),[7] and the court reasoned:

> The power to locate and construct a street can only be exercised by a municipality and can only be made effective by invoking the power of eminent domain as given by the statute hereinbefore cited. (citation omitted) 174 F. at 738, 3 Alaska Fed. at 436.

Under the reasoning in *Ashby*, the express and exclusive authority to operate a school system, coupled with the statutory permission to condemn land for public buildings for school districts, conferred upon the Borough the authority to condemn land for a school.

We turn next to the three attorney's fees issues raised in this case. The GAAB appeals the trial court's decision to grant attorney's fees to the condemnees and also questions the court's award of the full costs of the landowners' appraisers. Alaska Vet, in its cross-appeal, raises the issue of whether the trial court erred in calculating the amount of attorney's fees pursuant to Rule 82, Alaska Rules of Civil Procedure.

The trial court awarded attorney's fees to the condemnees, Alaska Vet and Pago, pursuant to Rule 72(k)(4), Alaska Rules of Civil Procedure.[8] Since the jury's award to the condemnees was less than the amount awarded by the master, the landowners were not entitled to fees under subsection (2) of Rule 72(k). Thus, the narrow issue to be decided here is whether the trial court erred in granting fees as "necessary to achieve a just and adequate compensation of the owner[s]" under subsection (4) of Rule 72(k).

In *Stewart & Grindle v. State*, 524 P.2d 1242 (Alaska 1974), we dealt with this question of when Rule 72(k)(4) should be invoked to reimburse landowners for amounts spent on attorney's fees. We held that condemnees should be compensated in cases where their attorney's fees were "necessarily incurred." In this case, as in *Stewart & Grindle*, the amounts initially offered to Pago and Alaska Vet by the Borough were sufficiently low to "have led the property owners to believe that it would be necessary to retain an attorney in order to obtain just compensation for the taking of their property."[9]

The Borough initially tendered $24,500 to Alaska Vet as just compensation for its land. The fair market value of the land, as evidenced by the jury's award, is $34,125

---

6. AS 07.15.330(a) (repealed October 1972).

7. *Eminent Domain*, Carter's Ann.Civ.Code Alaska Ch. 22 § 204 (1910) included in its list of uses for which the right of eminent domain may be exercised:
    (3) Public buildings and grounds for the use of any precinct, city, town, village, school district, or other municipal division, whether incorporated or unincorporated; . . . roads, streets, alleys . . .

8. Rule 72(k) provides:
    (k) *Costs.* Costs and attorney's fees incurred by the defendant shall not be assessed against the plaintiff, unless:
    (1) the taking of the property is denied, or

    (2) the award of the court was at least ten (10) percent larger than the amount deposited by the condemning authority or the allowance of the master from which an appeal was taken, or
    (3) the action was dismissed under the provisions of subdivision (i) of this rule, or
    (4) allowance of costs and attorney's fees appears necessary to achieve a just and adequate compensation of the owner.
    Attorney's fees allowed under this subdivision shall be commensurate with the time committed by the attorney to the case throughout the entire proceedings.

9. 524 P.2d at 1250.

which represents approximately a 40% increase over the State's original offer. The Borough initially tendered $26,500 to Pago, and the jury's award of $40,250 to Pago represents approximately a 52% increase over the State's original offer. These figures indicate that the State's original offers were low enough to make it necessary for Alaska Vet and Pago to hire attorneys.[10]

Although we hold that those fees incurred from the time that Alaska Vet and Pago hired attorneys to the date of the master's award were necessarily incurred and thus compensable under Rule 72(k)(4), Pago's decision to appeal the master's award prevents it from recovering its subsequent expenditures for attorney's fees. Rule 72(k)(2) specifies that attorney's fees may not be assessed against the condemnor unless the award of the court "[is] at least 10 percent larger than the amount deposited by the condemning authority or the allowance of the master from which an appeal was taken." We interpret this to mean that when a landowner appeals a master's award, he will be entitled to attorney's fees only if the court's award is 10 percent higher than the allowance of the master. The purpose of this provision was articulated in *City of Anchorage v. Scavenius*, 539 P.2d 1169, 1176 (Alaska 1975), in which we stated:

> In promulgating Rule 72(k) in its present form, the then members of the Alaska

Supreme Court gave consideration to deterrence of unwarranted litigation. Such a consideration obviously fostered the requirement that the owner secure an increase over the amount deposited or previously awarded by 10 percent to be entitled to costs and attorney's fees. Thus, he and his attorney must calculate whether his claim warrants the out-of-pocket expenses which must be incurred as well as the time and effort which must be devoted to the particular proceeding. These considerations should result in preventing most frivolous appeals.

Since Pago chose to appeal the master's award and the jury awarded an amount less than the allowance of the master, Pago should not have been compensated for attorney's fees incurred subsequent to the time the appeal was taken. Alaska Vet, which did not appeal the master's award, was required to participate in the superior court proceedings. Its attorney's fees were thus necessarily incurred, and award of those fees constituted just compensation.[11]

The trial court awarded the full amount of appraisers' fees incurred by the condemnees. The GAAB appeals this award on the basis that an appraiser is an expert witness, and Administrative Rule 9(c) only allows $25 per hour as compensation for experts.[12] This argument is unmeritorious. The use of appraisers during trial was necessary "to establish the appro-

10. This conclusion is based in part on a close analysis of the facts in *Stewart & Grindle*. For purposes of that decision, three separate condemnation cases were consolidated for review. In one, the master's award, which was accepted by the landowner, represented a 49% increase over the state's initial offer, and in another, the master's award was 46% higher than the initial offer. Since we held the state's initial offers in those cases to be "grossly inadequate," we have no difficulty in finding that the Borough's initial offers in this case were low enough to cause Alaska Vet and Pago to hire counsel in order to obtain just compensation for their land.

11. The Borough argues that since Alaska Vet did not state for the record its willingness to accept the master's award, it must have been a willing participant in the appeal. However, there is no requirement that a landowner ac-

knowledge on the record his acceptance of the master's award. It can be assumed that a party that does not appeal is willing to accept the amount allowed by the master.

12. Alaska Administrative Rule 9(c) provides:
*Expert Witnesses.* A witness called to testify as an expert witness shall receive additional compensation to be fixed by the judge with reference to the value of the time employed and the degree of learning or skill required; but such additional compensation shall not exceed $25.00 per hour while so employed and testifying, except as otherwise provided in these rules. No more than 3 expert witnesses shall be allowed to testify on each side as to the same issue in any given case, unless the judge trying the case, in his discretion, permits an additional number of witnesses to testify as experts.

priate market value with some accuracy," and award of their fees was necessary to achieve just compensation. *See Stewart & Grindle*, 524 P.2d at 1249, 1250.[13] Since Pago elected on its own to appeal from the master's award and received less than 10 percent more than the allowance of the master, under the provisions of Rule 72(k), it is not entitled to such costs as the appraiser's fees incurred subsequent to the issuance of the master's award.

 In its cross-appeal, Alaska Vet questions the trial court's use of Rule 82, Alaska Rules of Civil Procedure in calculating the amount of attorney's fees to be awarded.[14] Rule 72(k) provides that the award of attorney's fees "shall be commensurate with the time committed by the attorney to the case throughout the entire proceedings." This provision is fundamentally inconsistent with the concept of partial compensation afforded by Rule 82. In *Stewart & Grindle* we held that where a provision of Rule 72(k) specifically provides for the circumstances under which fees are to be awarded in an eminent domain case, it governs to the exclusion of Rule 82.[15] Since Rule 72(k) is specific in mandating the award of full compensation when attorney's fees are appropriate, the trial court erred in using the Rule 82 tables.

Thus, while the trial court's decision to award attorney's fees under Rule 72(k)(4) is upheld, the actual award is set aside, and the trial court must determine the actual amounts of fees incurred to the extent that we have held that they are compensable in this opinion. The award of full appraiser's fees to Alaska Vet is affirmed. Since Pago is not entitled to compensation for any costs incurred subsequent to the master's award, that portion of the award of appraiser's fees to Pago is set aside.

AFFIRMED IN PART, REVERSED IN PART.

---

**13.** *See also New Jersey Turnpike Authority v. Bayonne Barrel & Drum Co.*, 110 N.J.Super. 506, 266 A.2d 164 (1970), where the court said:
>Does a condemnee receive just compensation or is he 'made whole' if he must expend large sums of money to insure that he gets a fair price for his land? We think not.

**14.** Rule 82, Alaska Rules of Civil Procedure provides in part:
*Attorney's fees.*
>(a) *Allowance to Prevailing Party as Costs.*
>(1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment

therein, as part of the costs of the action allowed by law:

Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount.

**15.** 524 P.2d at 1251.