Wallace E. MARTENS and Frank W.
Harris, Appellants,

v.

STATE of Alaska, DEPARTMENT OF
HIGHWAYS, Appellee.

No. 4756.

Supreme Court of Alaska.

Feb. 6, 1981.

Leroy J. Barker, Robertson, Monagle, Eastaugh & Bradley, Anchorage, for appellants.

Michael W. Sewright, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

DIMOND, Senior Justice.

This appeal concerns the award of costs and attorney's fees in eminent domain proceedings pursuant to Civil Rule 72(k).

In March, 1973, the state filed an action in eminent domain to condemn land in Anchorage for a highway project. The land was owned by Wallace Martens and Frank Harris and was identified as parcels 134 and 135.

After the commencement of the condemnation action, the state offered $138,300.00 for parcel 134. Martens and Harris rejected this offer and the case was submitted to a master pursuant to Civil Rule 72(h)(2). The master awarded Martens and Harris $218,700.00 in June, 1973. The state appealed the master's award and simultaneously raised its offer to $165,960.00, a figure still unacceptable to Martens and Harris. In October, 1974, a superior court jury valued the property at $182,650.00.

Martens and Harris appealed to this court. The superior court judgment was reversed and a new trial ordered, on the ground that the trial judge's instructions did not allow the jury to consider the reasonable probability of zoning changes in deciding the value of the condemned land.

*Martens v. State*, 554 P.2d 407, 410–11 (Alaska 1976).[1]

At the end of the first trial, Martens and Harris requested attorney's fees under Civil Rule 72(k) of $5,035.00 with respect to parcel 134, and $5,260.00 with respect to parcel 135. The superior court ruled that the landowners were entitled to attorney's fees of $5,000.00 with respect to parcel 135 under Civil Rule 72(k)(2). However, with respect to parcel 134, the court held that Martens and Harris were entitled to recover attorney's fees incurred only through the master's hearing, and that neither Civil Rule 72(k)(2) or 72(k)(4) justified an award to them for fees incurred by virtue of the jury trial. The superior court ordered Martens and Harris to resubmit their claim for attorney's fees as to parcel 134 in accordance with its decision.

For some reason not shown in the record, the submission by Martens and Harris in response to the court's order itemized attorney's fees for parcel 135, and not for parcel 134. This claim was for $1,080.00. The state opposed the claim for $1,080.00, *not* because it related to parcel 135,[2] but (1) because the defendants were seeking fees incurred beginning June 2, 1972, nine months before the condemnation action was filed, and (2) because no time was shown by Martens and Harris in their list of work performed by attorneys.

In ruling on this attorney's fees claim, the superior court judge mistakenly[3] said that he had earlier asked that Martens and Harris "resubmit on attorneys fees as to parcel 135." He noted that Martens and Harris "did not itemize with particularity the attorneys fees requested," and that he thought the state's objection "to any attorneys fees incurred prior to the institution of the suit [was] well taken." He ruled: "I therefore will allow attorneys fees in the sum of $500.00 to the owner of parcel 135 as being ... a reasonable attorney fee—for attorneys fees incurred from the time of the declaration of taking and up to and including the master's hearing."

Martens and Harris appealed the adverse rulings on attorney's fees to this court at the same time that they appealed with respect to trial instructions. In reversing the trial court's judgment, this court did not reach the issue of attorney's fees because of the decision to remand for a new trial. *Martens v. State*, 554 P.2d 407, 411 (Alaska 1976).

After the second jury trial,[4] Martens and Harris claimed that with respect to *that* trial they were entitled under Civil Rule 72(k) to (1) attorney's fees of $11,395.00, (2) witness fees and costs for the services of an expert witness of $3,494.00, and (3) miscellaneous costs of $154.79. A superior court judge, different from the one who presided over the first trial, heard this motion for costs and attorney's fees. He ordered that "the defendants shall not be awarded any costs or attorney's fees." It is from this order that Martens and Harris appeal.[5]

1. On retrial the jury assessed the value of the property at $185,000.00, only $2,350.00 more than the first jury verdict of $182,650.00.

2. In their briefs on appeal, the parties have treated this claim for $1,080.00 as if it related to parcel 134.

3. The court's order of resubmission of the claim for attorney's fees was with respect to parcel 134, and not parcel 135.

4. The master's award and the initial jury trial concerned both parcels 134 and 135. After appeal to this court by Martens and Harris, the parties reached a compromise with respect to parcel 135 and stipulated to dismiss the portion of the appeal relating to that parcel.

5. The parties had entered into a stipulation dated October 22, 1973, by which the state deposited and the defendants withdrew $218,700.00, the amount of the master's award for parcel 134. The deposit was necessary for the state to take possession of the parcel pursuant to AS 09.55.380 and was made in conjunction with the state's motion for immediate possession dated October 15, 1973, and granted November 8, 1973. The judgment of May 4, 1980, awarded the state the difference between the $218,700.00 that was received by the defendants from the deposit and the $185,000.00 awarded the defendants by the second jury verdict, with adjustments made for prejudgment interest. The judgment also ordered that the defendants not be awarded costs or attorney's fees. Martens and Harris appeal from this part of the judgment.

The parties to the appeal treat that order as relating to costs and attorney's fees, not just as to the second trial, but with respect to the first trial as well.

The claims for costs and attorney's fees at issue in this case are best understood if divided into the following periods of time:

(1) costs and fees prior to the master's award, including (a) costs and fees prior to filing of the eminent domain action, and (b) costs and fees after the action was filed;

(2) costs and fees in connection with the first trial; and

(3) costs and fees in connection with the second trial.

We shall discuss these periods of time separately.

## I. General

The award of costs and attorney's fees in eminent domain proceedings is governed by Civil Rule 72(k). It provides:

> Costs and attorney's fees incurred by the defendant shall not be assessed against the plaintiff, unless:
>
> (1) the taking of the property is denied, or
>
> (2) the award of the court was at least ten (10) percent larger than the amount deposited by the condemning authority or the allowance of the master from which an appeal was taken, or
>
> (3) the action was dismissed under the provisions of subdivision (i) of this rule, or
>
> (4) allowance of costs and attorney's fees appears necessary to achieve a just and adequate compensation of the owner.
>
> Attorney's fees allowed under this subdivision shall be commensurate with the time committed by the attorney to the case throughout the entire proceedings.

■ The various claims for costs and attorney's fees by Martens and Harris are based on paragraph (4) of Rule 72(k). We set forth the general rationale of Rule 72(k)(4) in *Stewart & Grindle, Inc. v. State*, 524 P.2d 1242 (Alaska 1974):

> We believe that Rule 72(k)(4) when construed in the framework of the "just

compensation" clauses of the United States and Alaska constitutions *does* entitle the property owner to be made whole for expenses necessarily incurred in connection with the condemnation of his property. Without such a rule, the State forces a property owner to pay a greater portion of the costs of a public project than any other taxpayer must pay by afflicting him with the unavoidable expenses of condemnation. Placing such a burden on the property owner is no more than [sic] just than assessing a levy against him but no others.

*Id.* at 1250 (emphasis in original) (footnotes omitted). Thus, the test for each period of time at issue in this case is whether the claimed costs and attorney's fees were "necessarily incurred in connection with the condemnation of ... [the] property." *Id.* Expenses are "necessarily incurred" if the condemnee must undertake them "to insure that he gets a fair price for his land." *New Jersey Turnpike Authority v. Bayonne Barrel & Drum Co.*, 110 N.J.Super. 506, 266 A.2d 164, 166 (1970), *quoted in Stewart & Grindle*, 524 P.2d at 1250.

## II. Costs and Fees Prior to the Master's Award

The state concedes that Martens and Harris are entitled to costs and fees of $500 incurred between the time the state filed the eminent domain action and the time of the master's award, in accordance with the superior court decision made just after the first trial. Thus, the parties agree that the superior court decision appealed from should be reversed to that extent.

■ The state claims, however, that Martens and Harris are not entitled to costs and fees incurred prior to the filing of the eminent domain action. The potential necessity for incurring costs and fees before an eminent domain action is formally filed was at least implied in *Stewart & Grindle, Inc. v. State*, 524 P.2d 1242 (Alaska 1974). In that case the state began making offers to the various landowners involved in July, 1971, but did not file a complaint until March, 1972, after its offers had been refus-

ed. *Id.* at 1244. One group of landowners settled with the state after the matter had been referred to a master but before the master had conducted a hearing. *Id.* We held that appraisers' and attorney's fees had been necessarily incurred by all the landowners. We said:

> [I]t is evident that the services of professional appraisers were essential before the property owners could determine whether to accept the State's offer. And the grossly inadequate amount of the State's initial tender could reasonably have led the property owners to believe that it would be necessary to retain an attorney in order to obtain just compensation for the taking of their property.

*Id.* at 1250.

Recent decisions of this court have indicated that attorney's fees and costs incurred before a lawsuit has been filed are not generally recoverable. In *Alaska State Housing Authority v. Riley Pleas, Inc.*, 586 P.2d 1244, 1249 (Alaska 1978), we held that attorney's fees incurred for an arbitration hearing cannot be awarded under Civil Rule 82 because that rule only applies to "costs of the action," and not to costs before the action. In *State v. Smith*, 593 P.2d 625, 630–31 (Alaska 1979), we held that when an administrative order is appealed to the superior court attorney's fees incurred in the earlier administrative proceedings cannot be recovered. However, as we indicated in *Stewart & Grindle*, "eminent domain proceedings are unique, and are governed by comprehensive rules of procedure applicable to condemnation actions alone." 542 P.2d 1246 (footnotes omitted). Awarding costs and attorney's fees for legal services performed before the state filed its eminent domain action may be necessary to provide the just compensation owners are entitled to under Rule 72(k)(4) and the United States and Alaska Constitutions. An award of such fees and costs is an exception to the general policy against permitting an award

for fees incurred before the lawsuit was filed.

In this case the condemnation action was commenced on March 9, 1973, and the state's initial offer of compensation was made on June 7, 1973. However, Martens and Harris had retained services of counsel some nine months prior to the date the action was commenced. Although Martens and Harris did submit an itemization of attorney's fees to the superior court, the record does not sufficiently explain why services of an attorney were needed for that period of time. It is conceivable that, during that nine-month period, Martens and Harris were alerted to the fact that the state intended to take their property in an eminent domain proceeding. This possibly could have occurred if state highway appraisers had approached Martens and Harris and entered into negotiations with them in an attempt to persuade them to transfer their property to the state for specified sums of money in order to avoid the necessity of a condemnation action.

There is no indication that services of an attorney and possibly an appraiser during the nine-month period were not required in connection with the condemnation action that was to take place in the future. Nor is there anything in the record to demonstrate that such services were essential to Martens and Harris obtaining just compensation for their property. Because of this, this case must be remanded to the superior court for an evidentiary hearing in order to ascertain the reasons for Martens and Harris retaining the services of counsel, and perhaps also appraisers, during the nine-month period prior to the commencement of the action, and also prior to any official offer made by the state after the action was brought. If such expenses were reasonably necessary in connection with the ultimate condemnation of the property, then the superior court shall establish the reasonable value of attorney's fees and other expenses incurred during such nine-month period.[6] *See, e. g.,*

---

6. We note that, with respect to the time before and during the first trial, the record on appeal shows only a request for attorney's fees and not for any other costs.

*Stewart & Grindle, Inc. v. State*, 524 P.2d 1242, 1251 (Alaska 1974).[7]

### III. Costs and Fees in Connection with the First Trial

■ The state argues that under Rule 72(k)(4) Martens and Harris are not entitled to attorney's fees incurred in connection with the first jury trial, because they did not put their desire to accept the master's award on the record. We rejected this argument, however, in *Greater Anchorage Area Borough v. 10 Acres More or Less*, 563 P.2d 269 (Alaska 1977). In *10 Acres* we held that the condemnee's attorney's fees were necessarily incurred because, as a result of the condemning authority's appeal from the master's award, the condemnee "was required to participate in the superior court proceedings." 563 P.2d at 274. We referred to the condemning authority's argument that since the condemnee "did not state for the record its willingness to accept the master's award, it must have been a willing participant in the appeal." *Id.* at 274 n.11. But we rejected that argument. "[T]here is no requirement that a landowner acknowledge on the record his acceptance of the master's award. It can be

assumed that a party that does not appeal is willing to accept the amount allowed by the master." *Id.*

■ Similarly, because Martens and Harris did not appeal from the master's award, it can be assumed that they were willing to accept the amount allowed by the master. The state argues that, by presenting evidence at trial that their land was worth more than the master granted, Martens and Harris demonstrated their unwillingness to accept the master's award. We disagree. A landowner forced to trial by the state's appeal has the right to present evidence supporting an award greater than that allowed by the master, without taking a cross-appeal. *Inglima v. State Housing Authority*, 462 P.2d 1002 (Alaska 1970). The fact that he utilizes that right does not prove that he would have refused to accept the master's award in the absence of an appeal by the state.[8]

■ The amounts of both jury verdicts greatly exceeded any pretrial offer by the state.[9] Therefore, we hold that attorney's fees in connection with the first trial were "necessary to achieve a just and adequate

---

7. The state is, of course, free to challenge the necessity of requested costs and fees and may again raise any problems with insufficient itemization. But "we are confident that in the administration of Civil Rule 72(k)(4), our trial judges will be vigilant to prevent abuses, and to insure that the state is not taxed with needlessly-incurred expenses." *Stewart & Grindle, Inc. v. State*, 524 P.2d 1242, 1251 (Alaska 1974).

8. In *Inglima v. State Housing Authority*, 462 P.2d 1002 (Alaska 1970), we held that a landowner should be allowed the benefits of the jury trial following an appeal by the state "even though [the landowner] may be the *passive* party." 462 P.2d at 1006 (emphasis added). Our rationale was that it "seems ... unfair that an owner can be put to the emotional and economic distress of preparation for a jury trial but not receive the benefits of it." Because the state's appeal forced Martens and Harris to bear the burden of preparing for trial, they had the right to present their case for an award greater than the master's without foregoing their right to costs and fees under Rule 72(k)(4).

The state relies in part on a reservation of rights proviso made by Martens and Harris when they withdrew the state's $218,700.00

deposit (*see* note 5 *supra*). The proviso states: "Wallace E. Martens and Frank W. Harris shall not be prejudiced in any right that they may have to contest the adequacy of the award for the property taken or any and all other items of damage to which defendants may be entitled." This is insufficient to establish an unwillingness to accept the master's award.

9. The state's last offer before the first trial was only $165,960.00 or $16,690.00 less than the first jury verdict and $19,040.00 less than the second jury verdict.

Rule 72(k)(2) does not preclude recovery by Martens and Harris of fees incurred in connection with the first trial, despite the fact that both of the superior court awards were less than the master's award. We have interpreted Rule 72(k)(2) to mean that "*when a landowner appeals a master's award*, he will be entitled to attorney's fees only if the court's award is 10 percent higher than the allowance of the master." *Greater Anchorage Area Borough v. 10 Acres More or Less*, 563 P.2d 269, 274 (Alaska 1977) (emphasis added). However, the limit of Rule 72(k)(2) does not apply when, as in this case, it is the state rather than the landowner which appeals from the master's award. *Id.*

compensation of the owner" for purposes of Civil Rule 72(k)(4).

## IV. Costs and Fees in Connection with the Second Trial

At the second trial the jury awarded Martens and Harris $185,000.00 as just compensation for the taking of their property. This was only $2,350.00, or approximately one and one-half per cent, more than the $182,650.00 awarded at the first trial. In achieving this modest increase, Martens and Harris claimed attorney's fees of $11,395.00 and costs of $3,648.79 for the second trial.

Since the award at the second trial was less than ten per cent larger than the jury's verdict at the first trial, an argument could be made to the effect that the principle of Civil Rule 72(k)(2) [10] should be utilized or extended so as to deny any costs or attorney's fees to Martens and Harris. This would be the case despite the fact that there was involved here the difference between two jury awards, rather than the percentage difference between the court award and either the amount deposited by the condemning authority or the allowance of the master.

 Such an argument is not convincing. The purpose of subdivision (2) of Civil Rule 72(k) is to deter unwarranted litigation. *City of Anchorage v. Scavenius,* 539 P.2d 1169, 1176 (Alaska 1975), *quoted in Greater Anchorage Area Borough v. 10 Acres More or Less,* 563 P.2d 269, 274 (Alaska 1977). At the first trial of this action, the Superior Court gave inadequate jury instructions which required reversal by this court of the judgment. But we did not just reverse the judgment. In our mandate we also stated that "the case is remanded to the Superior Court for a new trial." The second

trial took place, not solely at the behest of Martens and Harris, but also because this court in its mandate ordered that there be a new, or second, trial. This was not a case of unwarranted litigation that would call into play subdivision (2) of Civil Rule 72(k). Rather, subdivision (4) of that rule would be applicable in requiring that costs and attorney's fees be assessed against the condemning authority as "necessary to achieve a just and adequate compensation of the owner[s]." Civil Rule 72(k)(4).

This case is REMANDED to the superior court for further proceedings not inconsistent with the views expressed in this opinion.

BOOCHEVER, J., not participating.

MATTHEWS, Justice, with whom BURKE, Justice, joins, dissenting.

Civil Rule 72(k) provides that a property owner in a condemnation suit is not entitled to costs and attorney's fees unless

(2) the award of the court was at least ten (10) percent larger than ... the allowance of the master from which an appeal was taken, or

. . . . .

(4) allowance of costs and attorney's fees appears necessary to achieve a just and adequate compensation of the owner.

Here the master's allowance from which the appeal was taken was $218,700.00 and the award of the court was $182,650.00, some 16.41% smaller than the master's allowance.

I believe that the only sensible construction of parts (2) and (4) of Rule 72(k) is that part (2) should apply except in extraordinary circumstances.[1] If the owner obtains

---

**10.** Civil Rule 72(k)(2) provides:

(k) *Costs.* Costs and attorney's fees incurred by the defendant shall not be assessed against the plaintiff, unless:

. . . . .

(2) the award of the court was at least ten (10) percent larger than the amount deposited by the condemning authority or the allowance of the master from which an appeal was taken ...

**1.** Of course part (4) may be used in circumstances where part (2) does not come into play because there has been no court determination of just compensation following a master's award, as when the parties settle prior to trial. *See Stewart & Grindle, Inc. v. State,* 524 P.2d 1242 (Alaska 1974).

from the court an award ten (10) percent or more larger than what he has gotten from the master he is entitled to attorney's fees, if he does not he obtains no attorney's fees. Only if there is some extraordinary feature in the case, as where the trial is unusually lengthy or expensive for reasons not caused by the owner, should part (4) be used. If part (4) is used in the absence of extraordinary circumstances, in cases where part (2) applies, it makes part (2) meaningless. Such a result runs afoul of the logical principle that all sections of an enactment should be construed so that each means something and does not conflict with another. *Estate of Hutchinson*, 577 P.2d 1074, 1075 (Alaska 1978).

Here the majority does not rely on extraordinary circumstances to justify departing from part (2) of the rule, and I agree that none exist. Instead, the rationale employed by the majority, if I understand it correctly, is that part (2) only applies when the owner appeals.[2] By its terms, however, the application of part (2) does not depend on who appeals. The majority relies on *G.A.A.B. v. Ten Acres More or Less*, 563 P.2d 269 (Alaska 1977) and properly so. However, for the reasons that follow I believe that *G.A.A.B.* was wrongly decided, and should be overruled.

In *Inglima v. Alaska State Housing Authority*, 462 P.2d 1002 (Alaska 1970) this court held that once either party appeals from a master's award, "the right to a jury trial vests by operation of law to all parties to the appeal." *Id.* at 1006. The effect of *Inglima* is that if the condemning authority appeals, the property owner gains nothing from filing his own appeal. The owner may contend at the trial to follow that the property is worth more than the master's award, and the condemning authority has no right to terminate the proceedings by dismissing its appeal and accepting the master's award. Seven years after *Inglima* this court held in *G.A.A.B.* that where the condemning authority has appealed from the master's award the question of whether the property owner would be awarded attorney's fees as a matter of right when the verdict is less than 10% greater than the master's award depends on whether the owner had filed a cross appeal. Since *Inglima* explicitly had held that the property owner's appeal was unnecessary and irrelevant when the condemning authority appeals, the *G.A.A.B.* holding made the question of the right to attorney's fees in these circumstances turn on a meaningless formality. The court in *G.A.A.B.* did not mention *Inglima* and, since it regarded the fact of the cross appeal as important, probably did not consider *Inglima* in reaching the result that it did.

The facts of *G.A.A.B.*, taken in light of the *Inglima* holding, indicate the irrationality of its holding. Two property owners were involved, Alaska Vet, and Pago. Both received master's awards and the Borough appealed in both cases. Pago took a cross appeal, but Alaska Vet did not. At trial, both Pago and Alaska Vet offered testimony seeking to increase the master's awards. The jury awarded Alaska Vet 17% less than the master's award and Pago 4% less than the master's award. This court held that Pago, which had appealed, was not entitled to attorney's fees and that Alaska Vet, which had not appealed, was entitled to a full award of attorney's fees. Since both Pago and Alaska Vet had presented evidence in an attempt to increase the master's award and since Alaska Vet was relatively less successful at the trial than Pago, this result cannot be rationally justified.

Because *G.A.A.B.* turns on a meaningless formality, I would overrule it. If this were done, part (2) of Civil Rule 72(k) would clearly preclude an award of attorney's fees to the property owners in this case. I would therefore affirm the decision of the superior court relating to costs and attorney's fees incurred in connection with the trials.

---

**2.** According to the majority, a non-appealing owner is presumed to be willing to accept the master's award. Whether this presumption is rebuttable, as for example through the use of a statement by the owner that the award is not acceptable, or irrebuttable remains an interesting question, but it is not central to the majority's rationale nor to my reasons for dissenting.