UNITED STATES of America, Plaintiff,

v.

341.45 ACRES OF LAND, et al., Defendant.

UNITED STATES of America, Plaintiff,

v.

21.90 ACRES OF LAND, et al., Defendant.

Civ. Nos. 5–77–57, 5–78–34.

United States District Court,
D. Minnesota,
Fifth Division.

June 8, 1982.

James M. Rosenbaum, U. S. Atty. by Donald F. Paar, Asst. U. S. Atty., Minneapolis, Minn., for plaintiff.

William W. Essling, St. Paul, Minn., for defendants.

MILES W. LORD, Chief Judge.

Three land condemnation cases involving four tracts of land were tried to a jury beginning on December 1, 1981. The jury reached its decision as to just compensation on December 18, 1981, and this Court entered its judgment confirming the jury award on December 29, 1981. The jury award came some 4½ years after the United States filed its complaint in condemnation in two of the cases and 3¾ years after such a complaint in the other.[1] The defendants now seek an award for costs, expenses and attorney fees in the sum of $98,744.76. The defendants argue that the Equal Access to Justice Act, 28 U.S.C. § 2412, which became effective October 1, 1981, enables them to seek such an award. The Court, therefore, must determine whether 28 U.S.C. § 2412 applies to land condemnation cases.

## DISCUSSION

### A. *History.*

The courts in the United States have traditionally required that each party be responsible for the payment of his own attorney fees and other expenses incurred during litigation. This "American Rule" is in contrast to the prevailing practice in England where as early as 1278 the English courts were authorized to award counsel fees to successful plaintiffs in litigation. Defendants achieved parity in the English courts around 1607. *See* Goodhart, Costs, 38 Yale L.J. 849 (1929); C. McCormick, Law of Damages 234–36 (1935). The federal courts in America between 1793 and 1853 followed a practice fashioned by Congress whereby attorney's fees and other litigation expenses could be awarded to successful litigants if so allowed in the respective state courts. § 4, 1 Stat. 333; *See* S. Law, The Jurisdiction and Powers of the United States Courts 255–282 (1852). This practice, however, resulted in wildly varying awards as no two states followed the same system. *See* the remarks of Senator Bradbury, Cong. Globe App., 32d Cong., 2d Sess., 207 (1853). Congress, therefore, in 1853 enacted legislation specifying those items which could be taxable to the losing party in federal court. One of the purposes of this legislation was to limit the amount of attorney's fees that might be charged to unsuccessful parties. Act of Feb. 26, 1853, 10 Stat. 161. The result was a statute which lists specific sums for various services of attorneys, solicitors and proctors. For example, two dollars and fifty cents was taxable to the losing party for each deposition admitted into evidence. An appeal to the circuit court would net five dollars. Until the passage of the Equal Access to Justice Act in 1980, Congress had not changed the general rule that allowances for counsel fees were limited to the sums specified by the costs statute, which by now

---

1. There are two different ways the United States can condemn property. It can initiate a condemnation proceeding by filing a complaint and declaration of taking. 40 U.S.C. § 258a. Upon depositing the monies, title vests in the United States and the property is valued as of that date. Alternatively, the United States may initiate a condemnation action by filing a complaint only, in which case no monies are deposited. In this situation, the property is valued as of a later date, the date of trial; and title does not pass to the United States until the amount determined to be just compensation is paid into the registry of the Court.

could be found at 28 U.S.C. § 1920 and § 1923(a).[2]

The Supreme Court has from the beginning been very skeptical about the judiciary's power to fashion a general rule awarding fees and expenses to the prevailing party in the absence of specific statutory authorization. *See Arcambel v. Wiseman*, 3 Dall. 306, 1 L.Ed. 613 (1796); *Day v. Woodworth*, 13 How. 363, 14 L.Ed. 181 (1852); *Oelrichs v. Spain*, 15 Wall. 211, 21 L.Ed. 43 (1872); *Flanders v. Tweed*, 15 Wall. 450, 21 L.Ed. 203 (1873); *Stewart v. Sonneborn*, 98 U.S. 187, 25 L.Ed. 116 (1879). Nearly 200 years later, the Court still maintains the position that, absent statute or enforceable contract, litigants pay their own attorneys' fees. *Fleishmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717, 87 S.Ct. 1404, 1406, 18 L.Ed.2d 475 (1967); *Hall v. Cole*, 412 U.S. 1, 4, 93 S.Ct. 1943, 1945, 36 L.Ed.2d 702 (1973); *F.D. Rich Co. Inc. v. United States ex rel. Industrial Lumber Co. Inc.*, 417 U.S. 116, 128–31, 94 S.Ct. 2157, 2164–66, 40 L.Ed.2d 703 (1974).

Costs, as opposed to fees and expenses, have traditionally been taxable to the losing party, apparently under the theory that they are not so much expenditures for the benefit of a particular party but rather "incurred under order of the Court to make possible or to facilitate its consideration of the case." *Ex Parte Peterson*, 253 U.S. 300, 316, 40 S.Ct. 543, 548, 64 L.Ed. 919 (1919). This approach has been carried forward by Rule 54(d) of the Fed.R.Civ.P. Interestingly, two major exceptions to Rule 54(d) are (1) costs are taxable to the United States only to the extent permitted by law, and (2) costs are not taxable to the losing party in a condemnation proceeding. The former exception appears to be predicated upon the now questionable principle that the sovereign can do no wrong or, at any rate, it cannot be sued without its consent. The latter is based upon a belief that usually the condemnor will be the prevailing party and that to charge the landowner with the government's costs for the taking of his land seems particularly cruel. Rule 71A(1) of the Fed.R.Civ.P., Notes of Advisory Committee on Rules Supplemental Report.

The exception to Rule 54(d) that permits the United States to escape the payment of its adversary's costs when it is unsuccessful finally prompted the Congress to enact a statutory provision disallowing such treatment. 28 U.S.C. § 2412(a) was enacted in 1948 and amended in 1966. 62 Stat. 973 (June 25, 1948), *as amended* 80 Stat. 308 (July 18, 1966). This Court has had the opportunity to examine 28 U.S.C. § 2412(a) in the past. In *Red School House, Inc. v. Office of Economic Opportunity*, 386 F.Supp. 1177 (D.Minn.1974), we noted that the purpose behind the statute was to prevent the expenditure of governmental funds without the authorization of Congress, the possessor of the spending powers of the federal government. *Id.* at 1197. Because the statute specifically excludes attorneys' fees, it was not very helpful in alleviating the economic disadvantages most litigants experience when they sue or are sued by the United States government. Even more distressing for condemnees was the Supreme Court's pronouncement in *United States v. Bodcaw Co.*, 440 U.S. 202, 99 S.Ct. 1066, 59 L.Ed.2d 257 (1979), that the statute has no application to condemnation cases. *Id.* 440 U.S. at 204, 99 S.Ct. at 1067. The reasoning behind this statement appears to be that the inequity of unequal treatment which existed between private litigants and the United States government, i.e., where if the government wins it receives costs, but if it loses it pays no costs, did not exist in condemnation cases. *United States ex rel. T.V.A. v. An Easement*, 452 F.2d 729, 730 (6th Cir. 1971). Traditionally, in condemnation proceedings each party paid its own costs. Nichols' The Law of Eminent Domain (rev. 3rd ed.) Vol. 6 § 27.6. This was seen as an attempt to protect the landowner who, it was argued,

---

**2.** The Congress has enacted a number of specific statutes authorizing attorneys' fees generally within the framework of statutory provisions granting or protecting various federal rights.

*See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 260–61, 95 S.Ct. 1612, 1623, 44 L.Ed.2d 141 (1975).

in most cases would be the losing party.[3] Rule 71A(1) Fed.R.Civ.P., Notes of Advisory Committee on Rules Supplemental Report; Nichols' The Law of Eminent Domain (rev. 3rd ed.) Vol. 4A § 14.249. The Congress correctly surmised that to require the landowner to pick up the government's costs for the taking of his land would be to reduce the just compensation paid for the land. Hearing on S.1351 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 90th Cong., 2nd Sess. 49 (1968). This was the case even though the Fifth Amendment's proscription against takings of "private property ... for public use, without just compensation" did not require the government to pay for such indirect costs to the property owner caused by its taking as attorneys' fees, *Dohany v. Rogers*, 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904 (1930), or expert witness fees. *United States v. Bodcaw Co.*, 440 U.S. 202, 99 S.Ct. 1066, 59 L.Ed.2d 257 (1979).

The inapplicability of 28 U.S.C. § 2412(a) to land condemnation cases is further demonstrated by Congressional action in 1968 and 1969 in which the Senate considered two bills specifically providing for the taxation of costs against the United States in condemnation actions. *See* S.1351, 90th Cong. 2d Sess. (1968); S.1719, 91st Cong., 1st Sess. (1969). The outcome of this effort was a rather limited statute providing for the assessment of costs against the United States where (1) the final judgment is that the federal agency cannot acquire the real property by condemnation; or (2) the proceeding is abandoned by the United States. 42 U.S.C. § 4654. Congress' failure to pass more comprehensive legislation in this area was due in part to a belief that to make the government pay the expenses incurred by property owners in connection with condemnation proceedings would be an invitation to increased litigation. *See* H.R.Rep. No. 91–1656, 91st Cong. 2d Sess. 25 p. 5895, U.S.Code Cong. & Admin.News 1970, p. 5850.

The Court is reluctant to call into question the wisdom of this view. Nevertheless, the settlement advantages to the government in these cases is obvious. Landowners are faced with the prospect of accepting bids far below what a jury might award them because to contest would not only take several years but their lawyers and experts would walk away with most of the money.[4] This result is not lost upon the Interior Department.

In this instance, the government in 1977 made an offer to Mr. and Mrs. Bassett of $34,000 for their land located in St. Louis County, Minnesota. In 1979, the jury awarded $232,000 for the land. Upon retrial in 1981, the jury awarded $204,500 to the Bassett children, both parents having died at different stages of the proceedings. The final award represents a 601%, or $170,500, increase over the government's original offer. The total costs, fees and expenses claimed in this matter are in excess of $65,000. The other two cases present a similar pattern.

### B. *The Equal Access to Justice Act.*

In 1980 the Congress enacted the Equal Access to Justice Act (Act). It amended 28 U.S.C. § 2412. In essence it allows (1) par-

---

3. This belief is premised upon the notion that the issue in a condemnation proceeding is whether the government has the authority to take the land. Inasmuch as the government almost always has the right to take the land under the Fifth Amendment there is little question as to which is the prevailing party. However, if one frames the issue as centering around the nature of just compensation, then it becomes possible to conceive of situations where the landowners would be the prevailing party. A landowner would then be a prevailing party under circumstances where the amount awarded is substantially above the government's final offer. *See Government of the Vir-*

*gin Islands v. 19.623 Acres of Land*, 602 F.2d 1130, 1135–36 (3d Cir. 1979); *Virgin Islands Housing v. 19.0976 Acres of Land*, 172 F.Supp. 333, 334 (D.V.I.1959).

4. The situation is not much better for landowners whose land is condemned by the State of Minnesota. *See State of Minnesota v. Carter*, 300 Minn. 495, 221 N.W.2d 106 (1974). A few states, such as Alaska, do allow a landowner to recover costs under certain circumstances. *Martens v. State of Alaska*, 623 P.2d 331 (1981) (to recover costs landowners must receive more than 10% of offer or deposit.)

ties to recover fees and expenses from the government under the common law exceptions of bad faith, common fund and common benefit, 28 U.S.C. § 2412(b) and (2) parties to recover fees and expenses from the government in situations where they can show that they were the prevailing party and that the position of the United States was not substantially justified, 28 U.S.C. § 2412(d)(1)(A) and (B).

The defendants argue that this new act is applicable to condemnation proceedings. They point out that the amendments were a response to the Supreme Court's decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In *Alyeska*, the Court held that the judiciary's equitable powers did not extend to awarding attorneys' fees to a party on the theory that they were performing the services of a "private attorney general." Only Congress could authorize such an exception, or others like it, to the American Rule. Congress recognized the tremendous advantage this result afforded the government.

> The American rule is grounded in the belief that a losing party should not be penalized for merely exercising his or her right to prosecute or defend a lawsuit. Thus, one of the stated purposes of the American rule is not to discourage or deter litigation. However, in many cases, particularly in litigation with the Government, the American rule is in fact having the opposite effect. For many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process. When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it. The deterrent effect created by this inability to recover fees against the Government is particularly disturbing in light of the rapid growth in Government regulations in recent years. While the influance [sic] of the bureaucracy over all aspects of life has increased, the ability of most citizens to contest any unreasonable exercise of authority has decreased. Thus, at the present time, the Government with its greater resources and expertise can in effect coerce compliance with its position. Where compliance is coerced, precedent may be established on the basis of an uncontested order rather than the thoughtful presentation and consideration of opposing views.

H.R.Rep. No. 96–1418, 96th Cong. 2nd Sess. 9–10; 1980 U.S.Code Cong. & Ad.News 5, p. 4988.

The House Report goes on to note that there was evidence that small businesses were the target of agency action precisely because they were unable to muster the resources necessary to fully litigate the issue. The defendants, by affidavit, have introduced evidence indicating that the Interior Department purposefully bids in at an artificially low dollar amount and if the landowner becomes recalcitrant, the Department makes things expensive by delaying matters and then litigating to the hilt.[5] Given this practice, it is difficult to understand how landowners should be in any less of a position to benefit from this Act than small businesses. Nevertheless, the Court finds it impossible to accord any relief.[6]

---

5. The following is a quote contained in an affidavit submitted by William Essling, the defendants' attorney. The speaker is identified as Kenneth E. White, the National Park Service Land Acquisition Officer for the Voyageurs National Park. The date is August 21, 1977, and Mr. White is addressing a number of landowners at a public meeting in the Voyageurs Park.

> My job is to acquire this land for the National Park Service. I hope to acquire it for about 30¢ on the dollar. If the landowners cannot accept our reasonable offers we let the matter ride for a few years. Then if necessary we go to Court including trials and appeals. This procedure is very expensive for the landowners. If we cannot agree on our terms, the landowners can hire lawyers at one-third and pay the court costs in addition. All of this takes some several years.

6. This Court is not alone in finding it unfortunate that no relief can be afforded the landowners in this matter. *See United States v. 101.80 Acres of Land*, 92 F.R.D. 774 (D.Idaho 1982).

The Court finds nothing in the language of the Act or in the legislative history to suggest that the previous policy of holding 28 U.S.C. § 2412 inapplicable to condemnation actions has been reversed.[7] Sections (d)(1)(A) and (B) simply add more items that are now recoverable if certain statutory requirements are met. There is no indication that previously excerpted causes of action are now covered. The Fifth Circuit in *United States v. 329.73 Acres of Land*, 666 F.2d 281, 285 n. 3 (5th Cir. 1982), has already arrived at this result.

Insofar as the defendant's argument can be made out to claim that recovery is due under 28 U.S.C. § 2412(b) on grounds of bad faith, the Court shall address that issue.[8]

The Fifth Circuit in *329.73 Acres, supra*, suggests that the entire statute is inapplicable to condemnation proceedings. This Court, however, finds this result unintended. The rationale for holding that the statute does not apply to condemnation proceedings appears to be the rather dubious belief that the landowner could never be the prevailing party. *See Government of the Virgin Islands v. 19.623 Acres of Land*, 602 F.2d 1130, 1135–36 (3rd Cir. 1979) (Landowner can be considered prevailing party if issue is framed as involving compensation and amount awarded is substantially above the Government's offer.) While the section applies, the Court finds that the defendants have not shown bad faith.

IT IS THEREFORE ORDERED That defendants' motion is hereby denied.

---

7. Now 28 U.S.C. § 2412(a).

8. The defendants state, "The attached affidavit sets forth facts that show absolutely no justification for the government's action and in fact points in the clear direction of bad faith." While the Court cannot construe the facts alleged so as to constitute bad faith, a showing of no substantial justification does not require any intent laden evidence. *See United States v. 101.80 Acres of Land*, 92 F.R.D. 774, 776 n. 1 (D.Idaho 1982).